JOHN M. PEARSON *et al.*

*v.*

CHRISTIAN ZEHR.

*Filed at Springfield May 11, 1891.*

1.   LIVE STOCK COMMISSIONERS—*action for killing horses believed to have glanders—what constitutes a good plea.* In an action for trespass in breaking plaintiff's close and killing his horses and destroying his harness, the defendants pleaded in justification that it came to the knowledge of those of them who were the Board of Live Stock Commissioners of this State, that there was reasonable ground for belief that the horses of the plaintiff, kept in his close, were affected with a dangerous, contagious and infectious disease called "glanders," and that they, as such board, caused an examination and investigation to be made, upon which they found and decided three of the horses to be diseased and disordered with such disease, and one of the horses to have been exposed to infection from such disease, and the harness to be poisoned with such infection, and ordered and directed the other defendants to slaughter and kill said horses, etc.: *Held,* that the plea was bad on demurrer.

2.   To permit the Board of Live Stock Commissioners to determine, *ex parte,* that some of a man's horses have the glanders and others have been exposed thereto, and to hold such determination a justification for slaughtering the horses, without imposing on the board the burden of establishing affirmatively the actual existence of such disease and exposure, would not be a valid exercise of the police power of the State, but would be a palpable violation of the constitutional provision that no person shall be deprived of his property without due process of law.

3.   It is the fact of such disease, or of exposure thereto, which, under the statute, gives the power to the Board of Live Stock Commissioners to kill animals, and without the fact exists, the slaughter of the animals is not an act done under authority of law. It is no justification that the board of commissioners acted in good faith, that there were reasonable grounds for the belief that some of the horses were diseased with glanders and that others of them had been exposed to that contagion, and that they made an honest and careful investigation, to the best of their ability, and, as a result thereof, decided and determined that some of the horses were so diseased and that others had been so exposed.

4.   SAME—*action against, for slaughtering horses said to have glanders — may show disease not glanders — exemplary damages.* Where the slaughter of plaintiff's horses is justified on the ground that they had the glanders, upon which issue is taken, he may show that the disease

with which his horses were sick was not the glanders, and he may show this by witnesses who are familiar with maladies, other than glanders, to which horses are subject. He may show by them that the sickness from which his horses suffered was a disease of horses other than gland- ers. This is not a violation of the rule which excludes all evidence of purely collateral facts.

5. In an action of trespass against the members of the State Board of Live Stock Commissioners and their assistants, for entering the plaintiff's close and killing the horses of the plaintiff, as glandered, when in fact they were not subject to such disease, and the evidence tends to show that the trespass complained of was committed in a reck- less and offensive manner, the jury may award exemplary damages over and above the value of the property destroyed.

6. CONTAGIOUS AND INFECTIOUS DISEASES—*among domestic animals— how proven—competent witnesses.* The court is not prepared to hold that no one but a veterinary surgeon can properly testify in respect to the appearance and symptoms of diseased horses, and give an opinion upon the question of the existence or non-existence of a particular dis- ease or malady in such horses. It would seem that farmers and other persons who for many years have had the personal care and manage- ment of horses, both sick and well, and have had an extensive practical experience with such animals, and with some particular disease to which they are subject, and ample opportunity to observe and know the characteristics and symptoms of such disease, are well qualified to state whether, in a particular case, such characteristics and symptoms do or do not exist. And it would seem that they, after detailing facts which show that they have a practical and personal knowledge and experience in respect thereto, may properly venture an opinion in re- gard to the existence or non-existence of a disease with which obser- vation has made them familiar.

APPEAL from the Circuit Court of Tazewell county; the Hon. N. W. GREEN, Judge, presiding.

Messrs. PALMER & SHUTT, for the appellants.

Mr. W. R. CURRAN, and Mr. B. S. PRETTYMAN, for the ap- pellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The appellee, Christian Zehr, brought trespass *quare clausum fregit* against appellants for breaking and entering his close with force and arms, and killing certain of his horses and

4—138 ILL.

destroying certain of his harness, and he had verdict and judgment, in the circuit court of Tazewell county, for $1350 damages. Appellants pleaded not guilty, and also special pleas, wherein they justified the acts complained of upon the ground that the horses of appellee were diseased with a certain contagious and infectious disease called "glanders," and that the harness was poisoned with the contagion of that disease; that certain of appellants were and constituted the Board of Live Stock Commissioners of the State of Illinois, and that others of appellants were the servants and agents of said board, and that, in pursuance of the authority conferred upon appellants by law, they entered the premises and killed the horses and destroyed the harness, doing no more harm, etc. Various replications were interposed to these special pleas, and among them replications which denied that the horses were diseased with glanders and that the harness was infected with its poison, and replications which charged an excess of force, etc., and the trial was had upon the general issue and upon the issues formed on the replications.

Complaint is made that the court sustained a demurrer to an additional plea which was filed by appellants. The substance of that plea is, that it came to the knowledge of Pearson, McChesney and Smith, who were then the Board of Live Stock Commissioners of the State of Illinois, that there was reasonable ground for belief that the horses of the plaintiff, kept in his close, were diseased with a dangerous, contagious and infectious disease called "glanders," and that they, as such Board of Live Stock Commissioners, caused an examination and investigation to be made, and upon such examination and investigation found and decided three of the horses to be diseased and disordered with said disease, and one of the horses to have been exposed to infection from such disease, and the harness to be poisoned with such infection, and ordered and directed the defendants Johnson, Williams and Casewell to slaughter and kill said horses, etc. The duties which are to

be performed by the Board of Live Stock Commissioners, in cases where they find a dangerously contagious or infectious malady among domestic animals, are pointed out in section 2 of the act approved June 27, 1885, entitled "An act to revise the law in relation to the suppression and prevention of the spread of contagious and infectious diseases among domestic animals." (Laws 1885, p. 1.) It is to be noted that the only authority given them by the statute to kill and destroy domestic animals exists in cases of contagious or infectious diseases, and is the "power to order the slaughter of diseased animals," and the power "to order the appraisement and slaughter of all such animals as have been exposed to such contagion." The statute does not afford, and does not purport to afford, immunity to the commissioners, or to their agents and servants, in the event they slay live stock which has been negligently or erroneously determined by the board to be sick with a contagious or infectious malady, or to have been exposed to such contagion. It is the fact of such disease or of exposure thereto which, under the statute, gives the power, and without the fact exists the slaughter of the animals is not an act done under authority of law. In the case at bar it is no justification of that which was done that the commissioners acted in good faith—that there were reasonable grounds for the belief that some of the horses were diseased with glanders and that others of them had been exposed to that contagion, and that they made or caused to be made an honest and careful investigation and examination, to the best of their ability, and as a result thereof decided and determined that some of said horses were so diseased and that others of them had been so exposed. It is to be borne in mind that the act of 1885 makes no provision for compensation for animals killed by mistake, and which are not diseased with a contagious or infectious disease, or for paying the value of animals slaughtered upon an erroneous supposition that they had been exposed to such disease, and also makes no provision for a

suit or proceeding wherein, after proper notice to the owner of domestic animals supposed to be stricken with a contagious or infectious malady, and an opportunity afforded him to be heard and to introduce his witnesses, there can be a judicial ascertainment of the fact of the existence or non-existence of such disease or of exposure thereto, and that there is no pretense here of any such ascertainment of the fact or facts. To permit the commissioners to determine, *ex parte,* that some of the horses had the glanders and that the others had been exposed thereto, and to hold that determination a justification for slaughtering the horses, without imposing upon appellants the burden of establishing affirmatively the actual existence of such disease and such exposure, would not be a valid exercise of the police power of the State, but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law. In the late case of *Miller* v. *Horton et al.* 152 Mass. 540, it was held by the supreme judicial court of Massachusetts, that under a statute of that State providing that "in all cases of farcy or glanders, the commissioners, having condemned the animal infected therewith, shall cause such animal to be killed, without appraisement," the order of the commissioners affords no defense to an action by the owner, for compensation, against those who executed it, unless the animal killed is in fact infected with farcy or glanders. We think there was no error in sustaining the demurrer to the additional plea.

It is claimed that incompetent testimony was admitted in evidence, over the objections of appellants. In support of their special pleas appellants produced as witnesses a number of veterinary surgeons, who testified that there is a disease among horses known as "chronic glanders," that said disease is contagious and incurable, and that they had examined the animals in question, and were of opinion that all of said animals but one had said disease of chronic glanders, and who also stated at length the characteristic symptoms of glanders.

In denial of said pleas, and for the purpose of establishing the truth of his replications thereto, appellee introduced professional and scientific testimony tending to prove the absence of the symptoms of glanders in the horses in controversy, and that said horses did not have such disease; and several witnesses of experience and observation in handling horses, and who had had knowledge, observation and experience, more or less extensive, of and with the glanders, and who testified from their experience that the horses in question did not have the symptoms of glanders, and in their opinion did not have said disease; and also a large number of farmers and other witnesses, of many years' experience in handling and caring for horses, who had no personal knowledge of or experience with the disease called "glanders," but had extensive and frequent experience with and knowledge and observation of other diseases in horses, and who testified that they made examinations of the horses in controversy, and that they did not have the distinctive marks of glanders as detailed by the witnesses of appellants, but that they had the symptoms of another disease, and that in their opinion and judgment, based on their experience, said horses were suffering from such other disease. We are not prepared to hold that no one but a veterinary surgeon can properly testify in respect to the appearance and symptoms of diseased horses, and give an opinion upon the question of the existence or non-existence of a particular disease or malady in such horses. It would seem that farmers and other persons who for many years have had the personal care and management of horses, both sick and well, and have had an extensive practical experience with such animals, and with some particular disease to which they are subject, and ample opportunity to observe and know the characteristics and symptoms of such disease, are qualified to state whether in a particular case such characteristics and symptoms do or do not exist. And it would also seem that they, after detailing facts which show that they have a practical and personal

knowledge and experience in respect thereto, may properly venture an opinion in regard to the existence or non-existence of a disease with which observation has made them familiar. It would be difficult to say that such opinion would be of no probative force whatever, and it would be for the jury to say what weight should be given it. It was entirely competent for appellee to show that the disease with which his horses were sick was not the glanders. No reason is perceived why he might not do this by introducing witnesses who were familiar with maladies other than glanders to which horses were subject, and showing by them that the sickness from which his horses suffered was a disease of horses other than glanders. The introduction of such testimony can not be regarded as a violation of the rule which excludes all evidence of purely collateral facts. We find no material error in any of the rulings of the trial court in regard to the admission of testimony.

We have examined the instructions which were given by the court to the jury, and think that they were substantially correct. Complaint is made that some of those tendered by appellants were refused, but in our opinion several of those which were refused contained incorrect statements of the law, and the substance of the others was fully covered by instructions which were given.

It is suggested that the damages are excessive. It must be admitted that the damages assessed by the jury are some $400 more than the actual damages fairly shown by the record. But the evidence introduced by appellee tended to prove that the trespass complained of was committed in a reckless and, oppressive manner. At the instance of appellants the jury was expressly instructed to assess the damages at only such sum as would compensate the plaintiff for the actual injury sustained, and no more, "unless the jury believes, from the evidence, that the defendants committed such trespass willfully or recklessly, or in wanton disregard of plaintiff's rights." It must be presumed that the jury found that the conduct of

the appellants was reckless, oppressive or wanton. We are unable to say that such finding is so contrary to the evidence as to justify a reversal.

The judgment is affirmed.

*Judgment affirmed.*