# CASES DETERMINED

# January Term, 1904.

## Lowe, Respondent, vs. Conroy, Appellant.

*September 29, 1903—January 12, 1904.*

*Constitutional law: Police power: Health officers: Summary destruction of property: Liability: Quasi-judicial officers: Court and jury.*

1. The legislature may, under the police power, grant to boards of health authority to employ all necessary means to protect the public health, and may even authorize such bodies immediately and summarily to destroy private property which is in fact a nuisance or source of danger to public health, without a preliminary formal legal proceeding and a judicial trial.

2. The appearance of a malignant and contagious disease, such as anthrax in cattle, is in its nature such a menace to the public health as to bring it clearly within the class of cases which can only be effectually dealt with by the destruction of the animals afflicted.

3. Where *quasi*-judicial officers, such as a health officer or board of health, have summarily destroyed private property on the ground that it constituted a menace or cause of sickness dangerous to public health, the owner thereof may recover its value from the person responsible for its destruction, if such property was not *in fact* such a menace or source of danger, the judgment or discretion vested in such officers being no protection to him, in such a case, for an invasion of the private property rights of others if they have no redress except an action against the officers. *Fath v. Koeppel*, 72 Wis. 289, so far as it conflicts, overruled.

4. Uncontradicted evidence that the defendant, a health officer, made a written order directing the destruction of certain property of the plaintiff, that he gave personal directions to the

deputy health officer and others who actually destroyed the property, and that such persons acted and proceeded under his order and directions, is *held* sufficient to warrant the court in answering in the affirmative a question of the special verdict as to whether the defendant caused the destruction of said property.

APPEAL from a judgment of the circuit court for Clark county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

Respondent was engaged in the business of conducting a meat market in the city of Neillsville. Appellant is a physician residing there, and was the city physician and health officer. On August 3, 1901, a steer of respondent's herd of cattle on his farm was found sick from an ailment unknown to him, but supposed to have resulted from drinking water containing paris green. He called Dr. Brown, a veterinary surgeon, who gave the steer an antidote for paris green poisoning, but upon further examination informed respondent he believed the steer was afflicted with anthrax, and that another animal of the herd showed symptoms of anthrax. The steer died about eight o'clock in the evening of the same day. Respondent and his son flayed him, then buried the carcass, and placed the hide on others in the basement of his meat market. Dr. Roberts, the state veterinarian, arrived at Neillsville the following morning, and with respondent visited the place where the steer had died. Dr. Roberts procured some blood from the spot pointed out by respondent as the place where the steer had been flayed. This specimen of blood was mounted on microscopic slides by appellant's brother, a doctor at Neillsville, who examined it microscopically, and concluded it contained the bacilli of anthrax. The same slide was thereafter examined microscopically by Dr. Russell, the state bacteriologist, who reported to appellant that, so far as could be ascertained from the examination, the specimen disclosed the presence of the bacilli of anthrax. Appellant was absent from Neillsville August 3d and 4th. Dr. Roberts, the state veterinarian, left Neillsville August

4th, giving directions to appellant's brother to have the herd quarantined until his return. He returned August 7th, vaccinated the herd supposed to have been exposed, repeated this treatment August 19th, and then ordered the quarantine of the herd and pasture removed. On Monday morning, August 5th, appellant returned to Neillsville, was informed of these occurrences, held a consultation with the mayor of the city and chairman of the city board of health and the city attorney; later in the day received instructions from the secretary of the state board of health to destroy any hides which had been exposed, and disinfect the shop and premises if exposed to anthrax infection. Upon this and other information obtained by appellant he believed the steer died from anthrax, and that respondent's shop and some hides and beef in respondent's slaughter house had been exposed to this dangerous and infectious disease. He issued a written order August 5th, and directed Dr. Brown, as deputy health officer, to serve it on respondent. This order notified and directed respondent to remove the hides from the basement of his premises, and destroy them, and the beef of a heifer which respondent and his son had butchered and prepared for the market on the morning after flaying and burying the diseased steer was also to be destroyed. This heifer was the same animal that Dr. Brown had pointed out to respondent as having symptoms of anthrax. Respondent refused to comply with this order, and thereafter on the same day the hides and beef were burned under the supervision of the city mayor, pursuant to the order of August 5th.

It appears that anthrax is one of the most virulent and deadly diseases known to science, and infectious and epidemic in character to a high degree.

Upon the trial the court found that appellant acted in good faith in the discharge of what he deemed his duty as city physician and health officer; that he quarantined respondent's meat market premises; that he had good cause to be-

lieve the basement of the premises was a source of filth and sickness; that he ordered the destruction of the hides and beef which he believed had been exposed to the infection, and that this property was of a value of $239.70. The jury found that the steer was *not in fact* afflicted with any dangerous and contagious disease, and that appellant had no probable cause to believe that the steer was so afflicted. The court ordered judgment in respondent's favor, and awarded him judgment for the value of the hides and beef and for costs.

This is an appeal from that judgment.

*S. M. Marsh,* for the appellant.

*J. E. Wildish* and *L. M. Sturdevant,* for the respondent.

SIEBECKER, J. The appellant, as a health officer of the city of Neillsville, seeks to justify the destruction of respondent's property upon the authority vested in the board of health for the adoption of such measures to abate nuisances and remove sources of filth and causes of sickness as may be deemed most effectual to preserve the public health. By sec. 1411, Stats. 1898, it is provided that every town, village, and city board of health "may take such measures and make such rules and regulations as they may deem most effectual for the preservation of the public health. They may appoint as many persons to aid them in the execution of their powers and duties as they may think proper, . . . examine into all nuisances, sources of filth and causes of sickness and make such rules and regulations respecting the same as they may judge necessary for the protection of the public health and safety of the inhabitants." Sec. 1412, Stats. 1898, prescribes as a part of the health officer's duty:

"Upon appearance of any dangerous contagious disease in the territory within the jurisdiction of the board of which he is a member to immediately investigate all the circumstances attendant upon the appearance of such disease," and "at all times promptly to take such measures for the preven-

tion, suppression and control of any such disease as may in. his judgment be needful and proper, subject to the approval of the board of which he is a member."

By sec. 1414, Stats. 1898, boards of health are given authority to order nuisances and causes of sickness removed from private property by the owner or occupant, and upon. his refusal or neglect to comply the board may cause its re- moval, and recover the expense thereof.

The common council of the city of Neillsville by ordinances adopted these provisions as a part of the regulations for the preservation of the public health, and provided for· the organization of the board of health, prescribing the duties of the board and its health officer in carrying out the powers. and duties imposed by law. Neither the statutes nor the· ordinances of the city for the preservation of the public· health make provision for a hearing before the board or otherwise of the person charged with maintaining a nuisance,. source of filth, or cause of sickness. The board or its members or officers may abate and remove the nuisance, source of filth, or cause of sickness without any such hearing, even. though such proceeding necessitates the destruction of private· property.

The statutes were unquestionably framed upon the fact· that such boards must act immediately and summarily in· cases of the appearance of contagious and malignant diseases,. which are liable to spread and become epidemic, causing destruction of human life. Under such circumstances it has. been held that the legislature under the police power can rightfully grant to boards of health authority to employ all' necessary means to protect the public health, and, if necessary, go to the extent of destroying private property when the· emergency demands. *Bittenhaus v. Johnston,* 92 Wis. 588, 66 N. W. 805; *Salem v. E. R. Co.* 98 Mass. 431; *Lawton v.. Steele,* 119 N. Y. 226, 23 N. E. 878; *S. C.* 152 U. S. 133, ·14 Sup. Ct. 499. The power to summarily abate nuisances.

was fully recognized and established as a principle of the common law, upon the ground that the requirement of preliminary formal legal proceedings and a judicial trial would result in defeating the beneficial objects sought to be attained. Within this principle, "quarantine and health laws have been enacted from time to time from the organization of state governments, authorizing the summary destruction of imported cargo, clothing, or other articles by officers designated, and no doubt has been suggested as to their constitutionality." *Lawton v. Steele, supra; Sentell v. N. O. & C. R. Co.* 166 U. S. 698, 17 Sup. Ct. 693; *Hart v. Mayor,* 9 Wend. 571; *Health Dept. v. Rector,* 145 N. Y. 32, 39 N. E. 833; *Rockwell v. Nearing,* 35 N. Y. 308.

The appearance of a malignant and contagious disease in cattle is in its nature such a menace to the public health as to bring it clearly within the class of cases which can only in many instances be effectually dealt with by the destruction of the animals afflicted.

Respondent insists that he has the legal right to recover his damages since the property was not in fact a nuisance, source of filth, or a cause of sickness, as contemplated by the statute for the preservation and protection of the public health. This presents the inquiry whether the determination of the health officers that a nuisance or cause of sickness dangerous to health in fact existed is a final determination, binding upon respondent as owner of the property which the health officer decided must be destroyed in order to abate the nuisance and remove the cause of sickness.

The statute, as stated, makes no provision giving the party proceeded against for such a nuisance or cause of sickness an opportunity to be heard before his property may be destroyed. While such a determination has been held to be a full protection to all persons acting under it in carrying out the purposes of the law—that is, to abate, and, if necessary, destroy, that which is in fact a nuisance or source of danger

to health—yet it is no protection for destroying private property which *in fact* is no such nuisance or source of danger. This is upon the ground that due process of law requires that the owner be given an opportunity to be heard at a trial before his private property can be adjudged forfeited for his misconduct, or for the protection of the public health. He cannot be deprived of the right, either before or after such taking of his property, to have a judicial inquiry whether *in fact* he has forfeited the right to his property by coming within the condemnation of the law. In such cases, where a board of health has summarily destroyed property, the owner may bring his action to recover the damages sustained, if it be found he has been unjustifiably deprived of it. In the absence of judicial inquiry wherein the owner is given full opportunity to establish that no nuisance or cause of sickness exists as claimed, the board of health cannot declare a thing a nuisance or source of danger to public health which is not so in fact. Their authority to act is bottomed upon the actual existence of the conditions which the statutes declare they may abate or remove. *Hutton v. Camden,* 39 N. J. Law, 122; *Lawton v. Steele, supra; Cole v. Kegler,* 64 Iowa, 59; 19 N. W. 843; *People ex rel. Copcutt v. Board of Health,* 140 N. Y. 1, 35 N. E. 320; *Health Dept. v. Rector,* 145 N. Y. 32, 39 N. E. 833, and cases; *Orlando v. Pragg,* 31 Fla. 111, 12 South. 368.

It is urged that no action can be maintained to charge appellant for the value of the property because in ordering its removal and destruction he was in the exercise of his official duty as city health officer. The laws for the preservation of the public health make no provision for the payment of property so destroyed by mistake on the order of health officers. The question then arises, Who is liable for the value of this property under the facts and circumstances of this case?

The jury found that the steer was not afflicted with a contagion, and that the beef and hides destroyed were not in-

fected with anthrax. It is clear that the city is not liable under the decisions of this court. In the case of *Kempster v. Milwaukee,* 103 Wis. 421, 79 N. W. 411, it is said:

"In carrying out the laws for the preservation of the public health the city is performing a duty which it owes to the whole public as distinguished from a mere corporate duty. It is a duty which it is bound to see performed in pursuance of law as one of the governmental agencies, but not a duty from which it derives special benefit or pecuniary advantage in its corporate or private capacity. *Hayes v. Oshkosh,* 33 Wis. 314, and cases cited."

As here indicated, under the laws of this state no liability on the part of a municipality arises for injuries resulting from the acts or default of its officers while performing a duty imposed upon it as a governmental agency for the public at large. *Durkee v. Kenosha,* 59 Wis. 123, 17 N. W. 677; *Folk v. Milwaukee,* 108 Wis. 359, 84 N. W. 420.

Appellant contends that he is not liable in this action upon the ground that the powers vested in members and officers of a board of health are discretionary in character, and that the duty of determining what are causes of sickness affecting the public health are *quasi*-judicial in character. The acts of appellant, as appears from the above statement of facts, were within the scope of his duty as health officer, and come within the class of *quasi*-judicial acts. It is the general rule that such officers are not liable in damages to private persons for injuries which may result from their official action done in the honest exercise of their judgment within the scope of their authority, however erroneous or mistaken that action may be, provided there be an absence of malice or corruption. Dillon, Mun. Corp. § 277, and note; *Steele v. Dunham,* 26 Wis. 393; *Druecker v. Salomon,* 21 Wis. 621; *Smith v. Gould,* 61 Wis. 31, 20 N. W. 369; *Gates v. Young,* 82 Wis. 272, 52 N. W. 178. The facts and circumstances show, however, that respondent's private property rights have been unjustifiably invaded, and that he will be remediless in the

law, unless it be that appellant and those who actually committed the trespass in wrongfully destroying his property are liable. Under such circumstances *quasi*-judicial officers have been held liable to respond in damages upon the ground that the exercise of this discretion is limited by the superior right guaranteeing to every person immunity from having his private property rights invaded except under the regular course of law, sanctioned by the established customs and usages of the courts. The discretion in which such officers are protected must be limited to the line where their acts invade the private property rights of another, for which invasion the law affords no redress other than an action against the one actually committing the trespass. *Hubbell v. Goodrich,* 37 Wis. 84; *Houston v. State,* 98 Wis. 481, 74 N. W. 111; *Cubit v. O'Dett,* 51 Mich. 347, 16 N. W. 679; *Miller v. Horton,* 152 Mass. 541, 26 N. E. 100; *Pearson v. Zehr,* 138 Ill. 48, 29 N. E. 854; *McCord v. High,* 24 Iowa, 336. The circuit court proceeded upon this principle, and held appellant liable in damages resulting from the destruction of the property, because it was *not in fact* a nuisance or cause of sickness endangering the public health. This course is assailed by appellant upon the authority of *Fath v. Koeppel,* 72 Wis. 289, 39 N. W. 539. This was an action against the defendant, as meat inspector of the city of Milwaukee, for the destruction of a quantity of fish as unwholesome for food. The action was upon the ground that his acts were without authority, but the court held that he had authority to inspect fish, and judge whether they were a proper article of diet, and to destroy them if he found they were unwholesome. It is stated in the opinion:

"He is vested with the power to determine the quality and healthfulness of fish in the market, and, if unwholesome or unfit to be eaten, to condemn and destroy them. This is a high and responsible judicial power, . . . and the officer exercising such a power is within the protection of that principle that a judicial officer is not responsible in an action for

damages to any one for any judgment he may render, however erroneously, negligently, ignorantly, corruptly, or maliciously he may act or render it, if he acts within his jurisdiction"—citing, among the authorities in support of this proposition, *Raymond v. Fish,* 51 Conn. 80.

The decision arose on demurrer, and seems to assume that the fish destroyed were *in fact* unwholesome, and not a fit article of diet. Under this assumption *of fact* the decision was in accord with the doctrine that health officers are not liable in damages for destroying property when such property is *in fact* a source of danger to the public health. The opinion, however, seems to go upon the ground that such *quasi*-judicial officers are under all circumstances absolutely protected from liability to the owner of the property, and are entitled to the same protection as an officer of a judicial tribunal in the discharge of official action within his jurisdiction. This is not the rule established under the adjudications. Upon the authorities cited and the reason advanced therein the rule is:

"Inasmuch as the law quite universally protects private property, . . . the judgment or discretion of a *quasi*-judicial officer, though exercised honestly and in good faith, does not protect him where, by virtue of it, he undertakes to invade the private property rights of others, to whom no other redress is given than an action against the officer." Mechem, Public Officers, § 642, and cases cited.

In so far as *Fath v. Koeppel, supra,* is in conflict with this conclusion, it must be deemed overruled.

Appellant assigns error upon numerous rulings of the trial court in admitting testimony over his objection and rejecting testimony offered by him. We have examined every exception brought to our attention, and find the court's rulings are correct. Many of the exceptions urged are immaterial under the final disposition of the questions litigated and the grounds upon which judgment was awarded.

It is contended the court erred in answering the following

question in the special verdict: "Did the defendant cause the destruction of the hides and beef?" The court answered it in the affirmative. An examination of the evidence shows there was no conflict as to the fact that appellant made the written order directing the destruction of the hides and beef, that he gave personal directions and instructions to the deputy health officer and others who actually destroyed the property, and that these persons acted and proceeded under his order and direction. This fully establishes the grounds which justify this answer to the question.

The evidence adduced fully sustains the findings of the jury. Upon the grounds stated, respondent was entitled to a judgment for the value of the property destroyed.

*By the Court.*—The judgment of the circuit court is affirmed.