DANIEL W. VALENTINE, PLAINTIFF IN ERROR, v. THE CITY OF ENGLEWOOD, BOARD OF HEALTH OF THE CITY OF ENGLEWOOD ET AL., DEFENDANTS IN ERROR.

Submitted March 23, 1908—Decided November 16, 1908.

1. A municipal corporation is not liable for the acts of a board of health created by public statute for the public benefit, even though its members are appointed by the municipal authorities.
2. The members of a board of health acting in performance of a public duty under a public statute to prevent the spread of an infectious or contagious disease, are not personally liable in a civil action for damages arising out of their acts in establishing a quarantine, even where the disease does not actually exist, provided they act in good faith.
3. Section 15 of the Board of Health act (*Gen. Stat., p.* 1638), which forbids suits against the board, its officers or agents, unless upon proof that the board acted without reasonable and probable cause to believe that the alleged cause of disease was in fact prejudicial and hazardous to the public health, does not infringe the constitutional provisions protecting private property and individual liberty.
4. Section 15 of the Board of Health act (*Gen. Stat., p.* 1638) in effect gives an action against the board upon proof of the facts therein set forth, but in such suits the question of reasonable and probable cause is for the court.

---

On error to the Supreme Court.

The declaration contains counts in trespass *quare clausum fregit*, for false imprisonment, and for libel. The defendants plead in justification that there were thirty cases of scarlet fever in the city of Englewood, and that the board of health had reasonable and probable cause to believe that the plaintiff's daughter was ill of the disease, and thereupon caused the plaintiff to be notified that they had declared his house quarantined, and that he had the option to place his child and her attendant in strict quarantine in a separate room, and to have the contents of the house fumigated by the board of health, or to have the entire house and occupants quarantined. The replication denied that the board of health had reasonable and probable cause to believe that the plaintiff's daughter was suffering from scarlet fever, and tendered issue thereon.

At the trial, upon the plaintiff's opening that the board of health acted without any authority at all of the city, a nonsuit was ordered in favor of the city of Englewood. The case proceeded against the board of health and the individual defendants.

The evidence showed that the city physician, one of the defendants, reported to the board of health a case of scarlet fever at the plaintiff's residence; and that at a consultation between Dr. Currie, of Englewood, and Dr. Bulkley, of New York City, the two latter stated that the case was not scarlet fever; that four local physicians were of opinion, from a statement of symptoms and without seeing the patient, that the case was scarlet fever. The city physician informed the plaintiff, at first by verbal notice, that the house was to be quarantined, and apparently gave the plaintiff the option to have a strict quarantine of the whole house established, or a quarantine of his daughter and her attendant in one room of the house. The plaintiff, in order to secure proof as to who was responsible, demanded a written notice; and thereupon such a notice was served, signed by the secretary of the board of health, in which the option of having the child and her attendant quarantined in a separate room, or of having the entire house and occupants quarantined was again

given to the plaintiff. He declined to avail himself of the option, a card was placed upon his office door indicating that there was scarlet fever on the premises, and measures were taken by the board of health to fumigate the house. There seems to have been nothing further done by way of enforcing the quarantine. When the plaintiff was asked what kept him in quarantine, what was done, and who did it, his only answer was that the health inspector came and fumigated the house.

The board of health had adopted ordinances pursuant to the statute, providing that persons affected by certain diseases, of which scarlet fever was one, should be isolated, quarantined, or removed to such a locality as the board might order and direct; and that buildings and property, which might become infected, should be disinfected or destroyed; and that the board might establish such separation and isolation or domestic quarantine of the sick from persons not necessary as attendants, as should be needed in order to prevent the spread of the disease.

For the plaintiff in error, *Adolf L. Engelke, Harry B. Brockhurst* and *Peter W. Stagg.*

For the defendants in error, *Albert C. Wall* and *Charles W. Hulst.*

The opinion of the court was delivered by

SWAYZE, J. We find it convenient to deal first with the liability of the city of Englewood.

The precise question involved is new in this court. In *Kehoe* v. *Rutherford,* 45 *Vroom* 659, there was active wrongdoing by the municipal authorities in collecting surface water and discharging it so that it injured the plaintiff's land, but that act was the act of the corporation itself for a special corporate purpose. A distinction is made in the cases in other jurisdictions between such acts and acts done in performance of a governmental function in execution of powers of a public and general character, delegated to the municipal-

ity for the welfare and protection of its inhabitants or the general public. Of the numerous cases collected in 28 *Cyc.* 1257, it will suffice to refer to *Daly* v. *New Haven,* 69 *Conn.* 644; *Colwell* v. *Waterbury,* 74 *Id.* 568; *Hourigan* v. *Norwich,* 77 *Id.* 358; *Hafford* v. *New Bedford,* 16 *Gray* 297; *Fisher* v. *Boston,* 104 *Mass.* 87; *Manners* v. *Haverhill,* 135 *Id.* 165; *Clark* v. *Easton,* 146 *Id.* 43; *Maxmilian* v. *Mayor,* 62 *N. Y.* 160. These cases have been followed by our Supreme Court in *Tomlin* v. *Hildreth,* 36 *Vroom* 438. A more recent case is *Cunningham* v. *Seattle,* 42 *Wash.* 134; 7 *A. & E. Ann. Cas.* 805, in a note to which numerous cases as to the non-liability of a municipality for acts of its firemen are collected.

The principle has been frequently applied to the acts of boards of health. *Summers* v. *Daviess County,* 103 *Ind.* 262; *Mitchell* v. *Rockland,* 52 *Me.* 118; *Nicholson* v. *Detroit,* 129 *Mich.* 246; *Bryant* v. *St. Paul,* 33 *Minn.* 289; *Lowe* v. *Conroy,* 120 *Wis.* 151. It seems to be founded in reason.

The acts complained of by the plaintiff were in performance of a governmental function imposed upon the board of health by the legislature, under a special statute relating to boards of health, for the benefit of the public at large. The duty was quite independent of any provisions of the city charter, and was in no way for the benefit of the city in its corporate capacity, or as the owner of property. The only connection, under the statute, between the city and the board of health is that the members of the board of health are appointed by the governing body of the city. This, however, did not make them the servants or agents of the city; they were public officers, notwithstanding the method of their appointment. *Hafford* v. *New Bedford,* 16 *Gray* 297; *Fisher* v. *Boston,* 104 *Mass.* 87; *Murphy* v. *Needham,* 176 *Id.* 422; *Maxmilian* v. *Mayor,* 62 *N. Y.* 160; *Felch* v. *Weare,* 69 *N. H.* 617.

The city could only be held by applying the rule *respondeat superior,* and that rule has no application in a case where the persons who commit the act complained of are neither the servants nor agents of the municipal corporation, nor acting in the performance of any corporate duty. So far as their act is

outside the limits of the corporate duty of the municipality, it cannot be considered the act of the municipality. 2 *Dill.* (*3d ed.*), §§ 968-974. The case is not altered by the fact that the court excluded the question whether the records of the common council showed any action on their part in regard to the quarantining of the plaintiff. At that time the nonsuit had already been ordered and nothing was said to indicate that the offer was to show anything that would conflict with the statement of plaintiff's counsel in his opening that the board of health acted without any authority from the city. It is not necessary, therefore, to consider whether the liability of the city would have been different if express authority had been shown. The evidence, moreover, becomes quite immaterial in view of other considerations to be stated.

No liability of the city was shown and in that respect the nonsuit was right.

The statute creating the board of health authorizes it to adopt ordinances to prevent the spreading of dangerous epidemics or contagious diseases, and to maintain and enforce sufficient quarantine when it deems necessary. *Gen. Stat., p.* 1644, *pl.* 49. The board is required by section 13 to examine into all causes of disease injurious to the health of the inhabitants, and to cause the same to be removed and abated. Section 15 enacts that no suit shall be maintained in any of the courts of this state to recover damages against any such board, its officers or agents, on proceedings had by them to abate and remove a cause of disease, unless it shall be shown in such suit that the cause of disease did not exist, was not hazardous and prejudicial to the public health, and that the board acted without reasonable and probable cause to believe that such cause was in fact prejudicial and hazardous to the public health.

The evidence in the present case justified an inference on the part of the jury that scarlet fever did not in fact exist; and as the trial judge nonsuited the plaintiff his ruling cannot be vindicated, if the actual existence of the disease is essential to the justification of the defendants. The issue joined upon the pleadings was only whether there existed reasonable and

probable cause to believe that the defendant's daughter was sick with scarlet fever, but it would be taking too narrow a view of the case to decide it upon this question of pleading only. We prefer to rest the decision upon broader grounds.

In the case of *American Print Works* v. *Lawrence*, 1 *Zab.* 248, and on appeal, *sub nom. Hale* v. *Lawrence, Id.* 714; *S. C.,* 3 *Id.* 590, it was held in the Supreme Court in a very able opinion by Chief Justice Green, that the defendant, who, as mayor of New York City, had destroyed real and personal property in order to stop the spread of a great fire, was not to be held responsible since he acted in pursuance of a duty imposed upon him by statute, and not for private emolument, or for his individual benefit. Chief Justice Green said (*p.* 260): "It is a well-settled principle that where a person in discharge of a public duty, not acting for private emolument, unwittingly injures another in the performance of the act, while acting with due skill and caution, he is not answerable for damages." The judgment was reversed in this court, upon the ground that the statutes of New York provided no compensation for the personal property destroyed, that the facts amounted to a taking of property for public use without compensation, and the case was, therefore, within the prohibition of our state constitution. The case afterwards came before the Supreme Court on a demurrer to amended pleas, and the judgment there rendered in favor of the defendant was affirmed in this court. 3 *Id.* 590. Justice Carpenter, in the course of his opinion took occasion to say (at *p.* 600): "A public officer, acting in good faith, upon a sudden and alarming emergency, under the sanction of a constitutional and valid law in a matter of public duty, is not to be held responsible for the unavoidable and necessary result of such act of duty. An injured party may have a right to resort to the public for satisfaction, but the law has ever held that the officer himself, not exceeding his power and not guilty of oppression or bad faith, is not personally liable." He quotes with approval what was said by Justice Nevius in *Sinnickson* v. *Johnson*, 2 *Harr.* 129, 150, where a distinction was drawn between acts done exclusively for the public inter-

est by agents appointed by public authority acting within the scope of that authority, and acts done for a private and individual interest. Justice Carpenter limits the exemption of public officers to acts done under the sanction of a constitutional and valid law, but, at the same time, quotes Chancellor Kent as extending the exemption to acts done under statutes, which were, *prima facie,* good; a view which seems to be sustained by the opinion expressed by this court in *Lang* v. *Bayonne,* 45 *Vroom* 455. It is, however, unnecessary for us to go to that extent in the present case, since we think the act constitutional for reasons to be hereafter stated. Nor is it necessary for us to go to the full extent justified by Justice Carpenter's language. He does not limit the exemption to officers acting judicially, and exercising their best judgment upon a state of facts, the conclusion from which may be doubtful or difficult.

In the discussion which arose after the decision of the famous case of *Ashby* v. *White,* 1 *Sm. Lead. Cas.* (*7th Am. ed.*) 455, it was expressly stated in the argument prepared by the committee of the house of lords, which was principally drawn up by the Lord Chief Justice, that fraud and malice were the gist of the action. The language quoted on page 484 is: "There is no danger to an honest officer that means to do his duty; for where there is a real doubt touching the party's right of voting, and the officer makes use of the best means to be informed; and it is plain his mistake arose from the difficulty of the case, and not from any malicious or partial design, no jury will find an officer guilty in such a case, nor can any court direct them to do it, *for it is the fraud and the malice that entitles the party to the action.*" In that case fraud and malice were averred in the declaration. Some American courts have gone so far as to hold that the officer is exempt, even in a case of corruption and malice. *Spaulding* v. *Vilas,* 161 *U. S.* 483, 493, 499, which was an action against the postmaster-general. *Weaver* v. *Devendorf,* 3 *Denio* 117, which was an action against an assessor for loss caused by an illegal assessment. Where there is no fraud or malice, the overwhelming weight of authority is in favor of

the exemption of the public officer from civil action, and the cases are not limited to officers acting in a judicial capacity, but reach the case of all who are called upon in behalf of the public to exercise their judgment. Thus it was held in *Otis* v. *Watkins,* 9 *Cranch* 339, that a collector of a port detaining a vessel under the Embargo law of 1808, need not show that his opinion that the vessel was about to violate the law was correct, nor that he used reasonable care and diligence in ascertaining the facts upon which his opinion was formed. It was said to be enough that he honestly entertained the opinion upon which he acted and, although Chief Justice Marshall dissented, he did not question this general principle, but placed his dissent upon entirely different grounds. The same view was expressed in *Kendall* v. *Stokes,* 3 *How.* 87. In New York it was held in *Williams* v. *Weaver,* 75 *N. Y.* 30, that assessors were not liable in a civil action for an unlawful levy. The court said: "That class of public officials is charged with duties which require the exercise of judicial functions, and when they are called upon thus to act, they are protected from the consequences which may flow from any error they may commit. Surrounded as these officers are by great difficulties in the discharge of their official duties, the law shields them when acting within their jurisdiction. In order to establish an individual liability, it must be made to appear against the assessors not only that the assessment was erroneous, but that such assessors had no jurisdiction whatever in laying the tax." The case subsequently went to the Supreme Court of the United States (100 *U. S.* 547), and Justice Miller said, in speaking of the decision of the Court of Appeals of New York upon this point: "Whether that court decided that question correctly or not, it is not a federal question, but one of general municipal law, to be governed either by the common law or the statute law of the state. In either case it presents no question upon which this court is authorized to review a judgment of the state court." This case was decided in 1880, long after the discussion arising out of the fourteenth amendment had become familiar; and it is, therefore, not only authority for the exemption of

public officers, but for the proposition that such exemption does not contravene the fourteenth amendment.

The principle was held applicable in *Teall* v. *Felton,* 1 *N. Y.* 537, to the case of a postmaster who assumed to charge letter postage on a newspaper, but it was held in that particular case that the postmaster did not act in a judicial capacity. The rule has been applied in the case of health officers. *Whidden* v. *Cheever,* 69 *N. H.* 142.

The exemption of officers from liability extends only to matters in which they have jurisdiction under the statutes; and it may be said that the board of health has no jurisdiction unless a cause of disease actually exists. This view is too narrow. The principle which was adopted by this court, and vindicated in an able opinion of Chief Justice Beasley in *Grove* v. *Van Duyn,* 15 *Vroom* 654, is applicable.

It is enough if the matter is colorably, though not really within their jurisdiction. A different view has been expressed in Massachusetts. *Miller* v. *Horton,* 152 *Mass.* 540, which was followed in *Pearson* v. *Zehr,* 138 *Ill.* 48, and in *Lowe* v. *Conroy,* 120 *Wis.* 151. The reasons are well stated by Mr. Justice Holmes, but are combatted with equal force by Justice Devens, and the case is weakened as an authority by the fact that it was decided by a bare majority of the court. Upon principle, we cannot distinguish the case from those above cited, where administrative officers were held exempt when called upon to act judicially. If a postmaster-general, or a postmaster or a collector of a port, or an assessor of taxes are to be immune when their error in judgment causes the loss of another's liberty or property, we think a board of health is entitled to a like immunity. A justice of the peace is immune if he acts in a matter colorably within his jurisdiction. The underlying reason is not the judicial character of the officer, but the judicial character of the act, and the public necessity that public agents engaged in the performance of a public duty in obedience to the command of a statute, should not suffer personally for an error of judgment which the wisest and most circumspect cannot avoid. It is not quite accurate to say that in such cases a man is deprived of liberty or property without

compensation. As Justice Devens pointed out "the individual is presumed to be compensated by the benefit which such regulations confer upon the community of which he is a member, or by which his property is protected." The case may, however, be looked at in another light. The board of health is acting for the public in the exercise of the police power of the state. For an error in the exercise of that power, no doubt the state ought to answer. Just as in an action for malicious prosecution, the principal who instigates the prosecution may be held, although the justice and the constable are immune, so in a case of an error in judgment by the board of health, it is the state which ought to answer for the default of its agent acting in obedience to its statutory command. The state does not, it is true, answer in an ordinary action at law in this or any other case, but there is the same remedy in all cases—an appeal to the justice of the state. A different view from that of the Massachusetts court prevailed in *Raymond* v. *Fish,* 51 *Conn.* 80; and in *Beeks* v. *Dickinson Co.,* 131 *Iowa* 244, a case decided after the cases last cited.

Miller *v.* Horton was decided in the absence of a statute such as ours, forbidding an action against the board unless lack of reasonable and probable cause can be shown. The same distinguished court has vindicated the right of the legislature to require all imported rags to be put through a disinfecting process at the expense of the owner, whether actually infected or not (*Train* v. *Boston Disinfecting Co.,* 144 *Mass.* 523), upon the ground that the legislature had the power to pronounce imported rags not yet disinfected nuisances in themselves, or, as Justice Holmes said in the later case, because the danger was too great to permit discrimination. What our legislature has done in the Health act is in substance to say that anything which may possibly be a cause of disease is subject to the regulations of the board of health when that board has reasonable and probable cause to think it to be in fact a cause of disease. Under such a statute the cases above cited from Massachusetts, Illinois and Wisconsin are not in point, and there is no reason why the or-

dinary rule exempting public officers from private action should not be applied. The board of health was acting for the benefit of the public at large, and pursuant to a duty imposed upon it by a public statute. There is not only no proof of malice, but the board acted with care, and not hastily, for it decided only after a conference between its own physician, a reputable physician of Englewood called in by the plaintiff, and a specialist from the city of New York. The doctors disagreed, at least in a measure; and the board of health was called upon to decide. They may have decided erroneously, but the matter was colorably within their jurisdiction.

The only difficulty which arises is that caused by the first opinion of this court in American Print Works Co. *v.* Lawrence. We there held that the mayor and aldermen of New York could not be exempt from civil liability where their act resulted in what this court held to be a taking of private property for public use contrary to our constitution. In view of the subsequent opinion of the court in that case, and the eminence of the judges of the Supreme Court, whose opinion was reversed in the first case, we think that, although we are bound by the actual decision of this court reported in 1 *Zab.*, we ought not to extend it further than the exact point decided requires. It was limited to a case where private property was taken for public use; and it was held that destruction to prevent the spread of a conflagration was such a taking. In the present case there was no taking of private property for public use. The acts of the defendants amounted to a mere trespass. It is urged, however, that the same principle ought to be applied, because of the fourteenth amendment to the federal constitution, which prohibits a state from depriving a citizen of liberty without due process of law. To this we think there are two answers. In fact, the plaintiff was not deprived of his liberty; and the conduct of the defendants amounted to due process of law, as that term is used in cases of this character. He was not deprived of his liberty, because the option was given to him to quarantine his daughter in a room of the house, if he so chose. He elected the

alternative of having the whole house quarantined, but that was his voluntary choice; and there seems to have been no show of force to prevent his going and coming as he chose. Whatever may be argued as to the imprisonment of his daughter, that is not now in question. His personal liberty does not seem to have been restrained. We were careful to say in *Hebrew* v. *Pulis*, 44 *Vroom* 621, that, although constraint might be caused by threats, as well as by actual force, the words or conduct must be such as to induce a reasonable apprehension of force, and the means of coercion must be at hand. The latter element is lacking in the present case. The real injury of which the plaintiff complains is the destruction of his business by posting upon his office door a notice that there was scarlet fever in the house. This, if false, was a libel, but it was not a deprivation of liberty.

Again, in cases affecting the public health, due process of law does not always require notice and a hearing. *People* v. *Board of Health*, 140 *N. Y.* 1. Where the board of health is required to act upon an emergency, due process of law requires only that they should be liable to an action in case they act wrongfully; but the action to which they are liable is only such action as the law gives. In this case the common law, as we have already shown, gave no right of action if the matter upon which the board decided was colorably within its jurisdiction. The object of the fourteenth amendment was not to give parties remedies which did not exist at the common law, but to protect them against hostile action by the state depriving them of the existing remedies. *United States* v. *Cruikshank*, 92 *U. S.* 542.

There is nothing in *Hutton* v. *Camden*, 10 *Vroom* 122, inconsistent with our view. The alleged nuisance in that case consisted in the fact that the defendants' lot lay below the grade of the street, so that water collected there, and the order of the board of health was to fill the lot to grade. Obviously this presented no such emergency as required immediate action. There was opportunity for notice and a hearing. That case was a suit by the city to recover the cost of filling the lot to grade; and a distinction is to be made between

the adjudication of the board of health as a defence to civil liability on their part, and as the basis of an action against the party alleged to maintain a nuisance. If the action had been by Hutton against the board of health, or their employes, for trespass in filling the lot up to grade, the case would have been similar to the present. This distinction is carefully pointed out by the Supreme Court of Massachusetts in *City of Salem* v. *Eastern Railroad Co., 98 Mass.* 431 (at *p.* 449), where the court said : "When there appears to have been no notice to the parties to be affected, and no opportunity afforded them to be heard in defence of their rights, whatever operation the adjudication may have upon the *res,* and however conclusive it may be held for the protection of those who act, or derive rights under it, the adjudication itself can have no valid operation against parties who may be named in the proceedings. If it proceeds to declare any obligation, or impose any liability upon such parties, they may, in any subsequent suit to enforce it, deny the validity of the judgment, and controvert the facts upon which it was based."

Hutton *v.* Camden was a case where it was attempted to make the adjudication of the board of health that a nuisance existed, final and conclusive, not only for the protection of the board against an action of trespass, but as basis of a legal liability of the landowner. In the present case, the legislature has itself undertaken in effect to make a nuisance of what the board of health shall, upon reasonable and probable cause, determine to be a cause of disease. It is unnecessary to cite the numerous cases decided by the United States Supreme Court justifying such a legislative exercise of the police power. In *Mugler* v. *Kansas, 123 U. S.* 623, a statute declaring all places in which intoxicating liquors are manufactured, sold, bartered or given away, to be common nuisances, was sustained, although the effect was to destroy the value of property. In *Holden* v. *Hardy,* 169 *Id.* 366, the Eight-Hour law of Utah was sustained, although it interfered with the freedom of contract. In *Jacobson* v. *Massachusetts,* 197 *Id.* 11, the Compulsory Vaccination act of Massachusetts was sustained, although it interfered with a man's per-

sonal liberty. These cases are but illustrations of the extent to which the highest tribunal has gone in vindication of the principle that the individual must yield somewhat of his personal rights to society in return for the benefits of society which he enjoys. We think it not unreasonable to require him in a case like the present to depend for redress upon the sense of justice of the public, rather than upon a right of action against public officers who have acted, as they thought, for the public weal in a matter of public duty.

The common law rights of the plaintiff are protected by the constitution, but the legislature has, by the Health act, given the plaintiff a right of action against the board as such where he can show that the cause of disease did not exist; that it was not hazardous and prejudicial to the public health, and that the board acted without reasonable and probable cause to believe that it was in fact prejudicial and hazardous to the public health. *Gen. Stat., p.* 1638, *pl.* 15. Although the language of the section is in form that no suit shall be maintained against the board of health, unless these facts are established, the necessary implication is that if the facts are established, a suit may be maintained.

In giving this action, the legislature had the right to determine what facts should be necessary to sustain it. They imposed no novel or unreasonable condition. The provision requiring that the plaintiff should show that the board of health acted without reasonable or probable cause, is in line with the existing common law in cases of this character. By common law an officer was justified, in certain cases, in making an arrest, where he had reasonable and probable cause for belief in the guilt of the person detained; and in actions for libel, a communication, fairly made by a person in the discharge of some public or private duty, whether legal or moral, is privileged, in the absence of proof of malice. The principle underlying these cases is applicable to the present case. By the act of 1903 (*Pamph. L., p.* 96), it is made a crime for any person, having reason to believe that he is affected with scarlet fever, to appear in any public place, and for any person knowingly to subject another, without the lat-

ter's knowledge, to exposure to the infection of any such disease. We do not mean to say that this statute reaches the present case; but it can hardly be libelous for the board of health, in good faith, to give notice of the existence of scarlet fever, when it is a crime for one who has reason to believe that he is affected with the disease, to appear in public; and it must be within the power of the legislature to give the right of restraint, amounting to imprisonment, to public officers who have reasonable and probable cause to believe that the crime denounced by the act of 1903 has been, or is likely to be, committed. It is, at any rate, enough for the present purpose that in providing for this action the legislature has made the want of reasonable and probable cause essential to the maintenance of the action.

The question remains whether a case is made out under this statute against any of the defendants. As to the board of health, it is clear that they acted upon the advice of their own physician, supported by the report made to them of the opinion of four other local physicians. We think that they were not bound to accept the opinion of the physician called by the plaintiff, and the specialist called from New York, but were justified in relying upon the advice of their own officer.

The case as to the physician himself is somewhat different. Prior to establishing the quarantine he had, at the conference with the other physicians, expressed himself as satisfied with their diagnosis, and it may be that this evidence would be sufficient to carry the case to a jury, as to Dr. Bradner, if the question were properly a jury question. At the time this statute was adopted, the words "reasonable and probable cause" were a familiar expression in the law, arising most frequently in actions for malicious prosecution; and, however anomalous the rule may be, it was well established that the question of existence of reasonable and probable cause, in an action for malicious prosecution, was a question for the court, where, as in this case, the facts are undisputed. *McFadden* v. *Lane, 42 Vroom* 624; citing with approval, *Bell* v. *Atlantic City Railroad Co., 29 Id.* 227; *Magowan* v. *Rickey, 35 Id.* 402. In an action for false imprisonment where the

arrest is justified on the ground of reasonable and probable cause, the question is for the court, where the facts are not disputed. *Lister* v. *Perryman, L. R.,* 4 *H. L.* 521; 39 *L. J. Exch.* 177. In our judgment the case failed to establish a want of reasonable and probable cause as against Dr. Bradner. The evidence of what Bulkley said to him or what Currie said as to the antecedent family history of the patient would not change this result, and its exclusion was not injurious error. Dr. Bradner seems to have been a reputable physician, acting according to his best light, in a case which four of his fellow-physicians, to whom the symptoms were described, pronounced to be scarlet fever. Whether it was so or not, he had reasonable and probable cause to think it so.

Middleton, the inspector, seems to have acted only in carrying out the order of the board, whose servant he was, and comes within the words of the statute exempting officers or agents of the board from suit.

For the reasons stated we think the trial judge was right in directing a nonsuit, and the judgment should be affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.    14.

*For reversal*—THE CHANCELLOR, BOGERT, J.    2.