Mary Edith SPILLMAN et al., Appellants,

v.

Emerson BEAUCHAMP, etc., et al., Appellees.

Court of Appeals of Kentucky
Nov. 9, 1962.

Bruce R. Hamilton, LaGrange, for appellants.

John B. Breckinridge, Atty. Gen., Walter Herdman, Asst. Atty. Gen., William G. Mullins, Dept. of Public Safety, Frankfort, for appellees.

CULLEN, Commissioner.

Mary Edith Spillman and Charles Ashbrook brought an action for damages against the Commissioner of the Department of Agriculture of Kentucky, three regular employes and two temporary employes of the department, an employe of the U. S. Department of Agriculture, and two state policemen. The defendants moved to dismiss on the grounds that the complaint did not state a claim upon which relief could be granted and that the court did not have jurisdiction of the subject matter. The court sustained the motion and entered judgment dismissing the action, from which judgment the plaintiffs have appealed.

The facts set forth in the complaint, if accepted as true, were sufficient to state several claims upon which relief could be granted, and presented issues of which the circuit court would have jurisdiction. However, in a "Memorandum in Support of Defendants' Motion to Dismiss" filed in the circuit court the defendants set forth a statement of facts which they relied upon as exonerating them from liability or at the least creating issues of which the circuit court would not have jurisdiction. Apparently the circuit judge accepted this statement of facts in ruling on the motion to dismiss. In so doing he erred.

It is true that CR 12.02 provides that if, on a motion to dismiss on the ground that the complaint fails to state a claim on which relief can be granted, "matters outside the pleading" are presented to and not excluded by the court, the motion shall be treated and disposed of as one for summary judgment. But statements of fact in a legal memorandum are not within the category of "matters outside the pleading" contemplated by the rule. United States v. Tuteur, 7 Cir., 215 F.2d 415. They lack the ceremonial quality of testimony in open court which may be found in depositions, admissions or affidavits. Sardo v. McGrath, 90 U.S.App.D.C. 195, 196 F.2d 20. Furthermore, a summary judgment is not to be granted unless the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue as to any material fact, CR 56.03. Here, even if the statement of facts in the defendants' memorandum were entitled to be considered, some of the facts in the statement controverted fact allegations of the complaint, so as to establish, rather than negative, the existence of genuine issues of material facts.

A strict adherence to the rules of civil procedure would demand that the judgment here be reversed outright, because the

allegations of the complaint, which stated several claims for relief of which the circuit court would have jurisdiction, were not in any way nullified procedurally by the defendants' memorandum in support of motion to dismiss. But the parties in arguing the case on appeal have treated certain questions as having properly been placed in issue, and we believe the progress of this litigation will be expedited if we dispose of those questions. So we shall.

One claim stated in the complaint was that the defendants wrongfully and maliciously entered upon the plaintiffs' farm and unlawfully, wrongfully and illegally converted, stole, removed and killed the plaintiffs' cow. In the statement of facts set forth in their memorandum in support of motion to dismiss, the defendants stated that they did enter upon the plaintiffs' farm, remove the cow and cause it to be killed, but in so doing they acted as officers and agents of the Kentucky Department of Agriculture under authority of and pursuant to the statutes relating to control and eradication of communicable diseases of livestock; that the cow had been tested by a veterinarian of the department and found to be suffering from Bang's Disease; that the plaintiffs had been ordered by the department to destroy the cow but had refused to do so; and the defendants in taking and killing the cow had acted under a specific order of the Commissioner of Agriculture directing such action.

The primary issues submitted on the appeal are whether the Department of Agriculture has statutory authority to kill an animal suffering from a communicable disease; whether (if such authority exists) the killing may be done summarily upon an ex parte determination by the department that the animal has the disease; whether, in the event of such a summary killing, the officers and agents who do the killing are personally liable in an action in the courts if it later is proved that the animal did not in fact have the disease; and whether, if they are so liable, the liability may be enforced by action in the courts or is en-

forceable only by proceedings before the Board of Claims under KRS 44.070 to 44.160.

■ We have no difficulty in concluding that the statutes governing control and eradication of communicable diseases of animals (even before the 1962 amendment to KRS 246.210) granted authority to the Department of Agriculture to kill diseased animals. KRS 246.210 authorized entry upon premises for the purpose of "in any way combating communicable diseases among livestock." KRS 257.020 gave the State Board of Agriculture power to "prevent, control and eradicate" any communicable disease of livestock. KRS 257.-030 vested in the board full authority to adopt and enforce regulations necessary to accomplish the purpose of the livestock disease laws. KRS 257.110 specifically provided for the slaughtering of diseased animals. (It is true that the latter section contemplates an appraisal procedure before the slaughtering in which the owner of the animal shall participate, but a reasonable construction of the statute would be that if the owner refuses to participate the appraisal and slaughtering may be carried on without his participation.)

■ The appellants maintain that even if the department does have statutory authority to kill a deceased animal, the killing may not be done summarily upon an ex parte determination by the department that the animal is diseased. The argument is that the owner is entitled under the Constitution to a hearing before the animal is killed. But the law is all to the contrary. The rule is firmly established that under the police power the government may cause the summary killing of an animal believed to be diseased, without giving the owner a *prior* hearing. All that is required by way of due process is that the owner be given the opportunity *subsequently* to litigate the question of whether the animal was in fact diseased, and be provided a remedy in damages in the event it is proved that the animal was not diseased. See Neer v.

State Live Stock Sanitary Board, 40 N.D. 340, 168 N.W. 601; Loftus v. Department of Agriculture, 211 Iowa 566, 232 N.W. 412; Pearson v. Zehr, 138 Ill. 48, 29 N.E. 854; Affonso Bros. v. Brock, 29 Cal.App.2d 26, 84 P.2d 515.

The most difficult question presented concerns whether the officers and agents who do the killing are personally liable in damages in the event it is determined in judicial proceedings subsequent to the killing that the animal was not in fact diseased.. It appears that in practically every case in other jurisdictions where the question has been specifically presented personal liability has been imposed. See Lowe v. Conroy, 120 Wis. 151, 97 N.W. 942, 66 L.R.A. 907; Loftus v. Department of Agriculture, 211 Iowa 566, 232 N.W. 412; Miller v. Horton, 152 Mass. 540, 26 N.E. 100, 10 L.R.A. 116; Pearson v. Zehr, 138 Ill. 48, 29 N.E. 854; Affonso Bros. v. Brock, 29 Cal.App.2d 26, 84 P.2d 515; North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195.

Although some of the decisions based liability on the theory that the officer or agent acted beyond the scope of his authority in killing an animal not in fact diseased (it being reasoned that the statutes authorized only the killing of actually diseased animals), it is reasonably apparent that the real basis (frankly admitted in some of the opinions) was that the owner was entitled to damages from someone for the wrongful taking of his property, and since the state by virtue of governmental immunity was not amenable to suit the burden of payment would have to fall on the officer or agent. For example, in Lowe v. Conroy, 120 Wis. 151, 97 N.W. 942, 66 L.R.A. 907, the court recognized the ordinary rule exempting a public officer from personal liability for acts done within the scope of his official duties, but announced that there must be an exception in cases where private property has been taken because otherwise the owner would have no remedy against the invasion of his constitutional rights of property.

We are not at all sure that in the kind of situation under discussion the state itself would not be liable in damages. If the killing of the cow falls into the category of a wrongful taking of property for public purposes, a basis for liability might exist under the principle announced in such cases as Commonwealth v. Kelley, 314 Ky. 581, 236 S.W.2d 695, and Keck v. Hafley, Ky., 237 S.W.2d 527. Furthermore, liability and appropriate remedial procedure perhaps might exist under the Board of Claims Act, KRS 44.070 to 44.160.

In any event we are not convinced that the personal liability of a public officer or agent for acts done within the scope of his authority should be predicated simply on the absence of a remedy against the government for which the officer or agent acts. It seems to us that in order to impose personal liability there should be some element of personal fault on the part of the officer or agent, such as negligence or deliberate wrongdoing.

██ The ordinary rule is that a public officer when acting in good faith within the scope of his authority is not personally liable for damages sustained by a member of the public as a result of his action, unless he acted negligently, that is, failed to meet the standard of the ordinarily prudent man. 67 C.J.S. Officers § 125, pp. 417, 418; J. F. Schneider & Son v. Watt, Ky., 252 S.W.2d 898. In our opinion this is a proper rule, and if under a particular set of facts liability would not exist under this rule liability should not be imposed on the officer simply because the government cannot be made to pay.

█ If, as has been assumed for the purposes of this discussion, the defendants in this case acted in good faith in carrying out their duties under the statutory system for control and eradication of communicable diseases of animals, and they were not chargeable with any knowledge that would have led a reasonable man to question the correctness of the veterinari-

an's diagnosis that the animal was diseased, it is our opinion that the defendants could not be held personally liable even if it should eventually be proved that the cow was not in fact diseased.

The complaint alleges, however, that prior to the time the defendants caused the cow to be killed a judgment had been entered in an action in the circuit court, brought by the Department of Agriculture, adjudging that the department had no authority to kill the cow and finding that the cow was not in fact diseased. The complaint further alleges that the defendants killed the cow in willfull and malicious defiance of the judgment.

Of course if the foregoing allegations are true they will furnish a basis for imposing personal liability upon the officers, because the allegations show a lack of good faith, an absence of reasonable grounds for the officers to believe the cow to be diseased, and the existence of aspects of a deliberate flaunting of legal rights.

The foregoing discussion has been addressed to those features of the case relating to the killing of the cow. However, a further, separate claim for relief also is alleged in the complaint.

 The complaint alleges that the defendants with malice and without probable cause swore out a warrant charging the plaintiffs with the nonexistent offense of "interfering with the orders of the Department of Agriculture," and that the plaintiffs were arrested on that warrant and confined for a period of time; that the charge was false and was eventually filed away.

Applying the test hereinbefore laid down in this opinion, the imposition of personal liability upon the defendants under the latter allegations would require proof that the defendants did not act in good faith or did not act as reasonably prudent men. There is an offense, under KRS 257.990 (10), of hindering an agent of the Board of Agriculture in carrying out the duties as-

signed to him, and if the defendants here had reasonable grounds for preferring charges of that offense against the plaintiffs, and they acted in good faith, we would not think that a mistake in the technical wording of the charge preferred would furnish a basis for imposition of personal liability. See 67 C.J.S. Officers § 125, p. 418.

 The appellees have argued that even if there exists a basis for personal liability on their part it can be enforced only by proceedings under the Board of Claims Act, KRS 44.070 to 44.160, and not by action in the circuit court. However, we do not find in the Board of Claims Act any evidence of an intent that it should apply to claims against a state officer or agent individually.

The judgment is reversed for further proceedings in conformity with this opinion.