BLASUS ISTVAN, PROSECUTOR, v. SAMUEL GRAY NAAR.

Submitted July 5, 1912—Decided March 4, 1913.

1. The act relating to regulating and providing for the government of cities, &c. (*Pamph. L.* 1911, *p.* 462), does not have the effect of abolishing boards of health organized under the general act of 1887 (*Comp. Stat., p.* 2656 *et seq.*) in municipalities which adopt it as a governmental scheme.
2. A writ of *certiorari* bringing up two convictions in separate proceedings for separate violations of municipal regulations is multifarious.

On *certiorari.*

Before Justices TRENCHARD, PARKER and MINTURN.

For the prosecutor, *Scott Scammell* and *Joseph L. Bodine.*

For the defendant, *Charles E. Bird.*

The opinion of the court was delivered by

PARKER, J.   The important question raised by this *certiorari* is whether by the adoption of the act known as the "Walsh act" (*Pamph. L.* 1911, *p.* 462), as the law regulating the municipal affairs of the city of Trenton, the general scheme of statutory regulation of the public health was superseded so far as related to the local board of health, and not only the terms of office of the members of that board terminated, but the board of health as a corporate entity wiped out of existence.

The question arises directly as bearing on the legality of two convictions brought up by the writ, both for violations of the local sanitary code. Prior to the adoption by Trenton of the act of 1911, suits to recover penalties for such violations must have been brought in the name of the local board of health. *Comp. Stat., p.* 2666, § 18. After the adoption of the act, the new government of five commissioners by resolution declared that the "services" of the members of the board of health were "discontinued and ended, to the end that the powers and duties pertaining to the public health now vested in this board (*i. e.,* the board of commissioners) by reason of the operation of chapter 221 of the laws of 1911, may be exercised and discharged by this body." And evidently upon the theory that the board of health itself no longer existed as such, the suits on which the convictions were had were brought in the name of "The Inhabitants of the City of Trenton," being the corporate name of that city.

Apart from the Walsh act, the matter is controlled by the Health act of 1887. *Comp. Stat., p.* 2666. Section 18 of that act gives to local boards of health power to prescribe penalties for violation of their ordinances, and provides, among other things, that certain courts on receiving sworn complaint may "issue process at the suit of any such board" and hear the case. This is the fundamental provision relating to enforcement of penalties for violation of the local sanitary code; and is found in a comprehensive scheme of legislation to protect the public health over the entire state, which at the time the Walsh act was passed had been in full operation for about a quarter of a century and applied to all municipalities alike. How far, if at all, was this scheme altered in Trenton by the adoption of the Walsh act by popular vote? The pertinent provisions of that act are these:

"The city council or other governing body or bodies theretofore acting as governing body or bodies and having any other functions shall be *ipso facto* abolished, and the terms of all councilmen, or aldermen, and all other officers whether elective or appointive, shall immediately cease and determine." Section 2.

"The board of commissioners shall have and possess all administrative, judicial and legislative powers and duties now had and possessed by the mayor and city council and all other executive or legislative bodies in said city, and have complete control over the affairs of the city adopting the provisions of this act." The departments of public affairs, revenue and finance, public safety, streets and public improvements and parks and public property are created. There is no department of public health, and no mention of any board of health. The act provides that the board of commissioners shall assign the powers and duties of the several departments; also that it shall create such subordinate boards and appoint such officers as it may deem necessary for the proper conduct of the affairs of the city. Section 4. By section 8, all cities adopting the act are empowered to enact and enforce by fine or imprisonment, ordinances necessary for the protection of life, health and property; to declare and prevent and summarily to abate nuisances, &c. Section 17 makes an exception as to formalities of enactment in favor of ordinances "for the immediate preservation of the public peace, health or safety." The word "health" does not occur elsewhere in the act.

It can hardly be denied that the legislature intended to confer on cities adopting the act of 1911 some power to legislate in matters of public health. But there is much greater difficulty in gathering from the general provisions creating the board of commissioners and defining their powers, and naming the five departments, an intent to transfer to such board all the legislative and administrative jurisdiction previously exercised by the board of health under the Health act. Granting that the legislature by the enactment of the statute of 1911 wished to create a scheme for the centralization of responsibility and authority, we should pause before construing the act as meaning, in the absence of plain words to that effect, that after its adoption there was to be no such thing as a board of health in the city of Trenton, and that the state-wide system of health boards which had existed for nearly a quarter of a century was to be abrogated

in cities adopting the act of 1911. The very catalogue of the departments would indicate that no interference with the Health act was intended; for the functions of a board of health have no special relevancy to any one of those departments, though they are in some aspects germane to all of them.

The secondary control of the board of commissioners, however, over the public health, is ample. By the Health act itself (section 9) the members of the local board of health are "appointed in such manner and hold office for such terms as the governing body may by ordinance provide." By the Walsh act the terms of all officers expire upon the organization of the board of commissioners. This left that board in absolute control of the situation, with power to fill the vacancies and to fix the terms of office of members of the board of health, subject to certain limitations. What the board of commissioners seems to have done by its resolution was to appoint its own members as a board of health; at least we deem this to have been the effect of their action. But when so appointed and so acting, they were the board of health of Trenton and not the board of commissioners and as such board of health should have appeared as plaintiff.

This result makes it unnecessary to consider the sufficiency of the title of the Walsh act as indicating a legislative intent to alter or amend the health acts by abolishing boards of health in certain cities. See *Board of Health v. Railroad Company,* 48 *Vroom* 15.

The convictions will be set aside. We do not wish, however, to be understood as sanctioning *sub silentio* the practice of bringing up two convictions in different proceedings by one writ of *certiorari*. In *Crombie v. Engle,* 4 *Harr.* 85, it was said the writ was not multifarious because the two orders brought up were in the same proceeding. Such a saving condition does not exist in this case. There should have been two writs presented for allowance. In *Bakeley v. Nowrey,* 39 *Vroom* 732, a similar point was noted by the Court of Errors and Appeals but not passed upon because not mooted in this court; but we think there can be no question as to

the impropriety of reviewing separate proceedings by one *certiorari* just as it would be improper to review separate judgments by one writ of error. *Licari* v. *Carr, post p.* 345.