55 N.J. Super. 164 (1959)
150 A.2d 94
RICHARD GROSSO, SAVERIO ALLEGRA, LEON GIACCONE, LOUIS GIORDANO, PATRICK LA SALLE, MARTIN LUIZZI, KATHLEEN D. NIXON, SUE LUND, HELEN SUPLICKI, DORIS VAN SYCKEL, NANCY J. DECKER, NANCY LUCARELLI FAMY, EVELYN L. BROWN, ELEANOR GOCHMAN, MARGUERITE MARSH SHARRY, MARY MIHALKO, JEANETTE LAUTH, ANN EODICE, HELEN CLEARY, PLAINTIFFS,
v.
THE CITY OF PATERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND BOARD OF HEALTH OF THE CITY OF PATERSON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 26, 1959.
*166 Mr. Irving I. Rubin, attorney for the plaintiffs.
Mr. Theodore D. Rosenberg, attorney for the defendants (Mr. Adolph Romel on the brief).
KOLOVSKY, J.S.C.
Plaintiffs, 19 in number, are employed by the Board of Health of the City of Paterson, hereinafter referred to as the "board of health," six as *167 sanitary inspectors, eight as public health nurses, and five as laboratory personnel. In this action, instituted on August 6, 1958, against the City of Paterson and the board of health, they seek to recover unpaid portions of the salaries allegedly due them for the period from January 1 through July 31, 1958.
Plaintiffs and defendants have each moved for summary judgment, supported by affidavits which have been supplemented by a stipulation of facts. The issues presented are legal; there is no dispute as to the essential facts.
Plaintiffs were appointed to their respective positions by the board of health; all have permanent status in such positions. The salaries and salary ranges applicable to such positions are those established and set forth in three ordinances duly adopted by the board of health, each also providing for the annual increments to be paid until the maximum of the salary range is reached.
One ordinance, adopted June 27, 1956, establishes a salary range for sanitary inspectors of $3,600  $4,200 per annum and provides for annual increments of $120, beginning January 1, 1957. A second ordinance, adopted June 11, 1957, establishes a salary range for public health nurses of $3,400  $4,400 and provides for annual increments of $200, beginning January 1, 1958. A third ordinance, adopted July 9, 1957, establishes salary ranges for classes of laboratory personnel, varying from a high of $5,660  $6,660 for the director of laboratories to a low of $3,200  $4,200 for laboratory technicians and also provides for annual increments of $200, beginning January 1, 1958.
Plaintiffs have not reached the maximum of their respective salary ranges. The sanitary inspectors received the $120 increase in annual salary which the ordinance provided for the year beginning January 1, 1957. But neither they nor any of the other plaintiffs have received any part of the increase or increment which the ordinances provides for the year beginning January 1, 1958, although the salary ordinances continue in full force and effect, and, indeed, defendant board of health adopted a resolution at *168 its meeting of December 10, 1957, directing payment to the respective plaintiffs, beginning January 1, 1958, of the increments provided by the ordinances.
On the showing thus made, unless the defenses asserted by defendants are valid, plaintiffs would be entitled to a judgment against their employer, defendant board of health, for the salary balances claimed. Plaintiffs have duly performed the duties of their positions during the periods involved; the salaries and the salary ranges were established by ordinances of the board of health, not by resolutions (cf. Howard v. Mayor, etc., of Paterson, 6 N.J. 373 (1951); Sagarese v. Board of Health of Morristown, 31 N.J. Super. 526 (Law Div. 1954)); no ordinance has been adopted reducing or changing those salaries and salary ranges, and they can be reduced or changed only by an ordinance, not by a resolution or other action (Heil v. Mayor, etc. of Wildwood, 11 N.J. Misc. 171 (Sup. Ct. 1933); Howard v. Mayor, etc., of Paterson, supra); plaintiffs have not waived their right to the increments; on the contrary, they protested their non-payment (Borz v. City of Camden, 119 N.J.L. 17 (E. & A. 1937); cf. Van Houghten v. City of Englewood, 124 N.J.L. 425 (Sup. Ct. 1940); Long v. Board of Freeholders of Hudson County, 10 N.J. 380 (1952).
The basic defense asserted by defendants, in addition to some peripheral issues which will be discussed later, is that there is no obligation to pay the 1958 increments because, defendants say, the Board of Finance of the City of Paterson has refused to approve such payments and to provide money from which they can be paid.
The sequence of events on which defendants rely began shortly after December 10, 1957, when the defendant board of health forwarded to the Board of Finance of the City of Paterson a copy of its resolution directing payment to the plaintiffs of the increments provided in the salary ordinances for the period beginning January 1, 1958. Under date of December 13, 1957, the clerk of the board of finance wrote defendant board of health as follows:
*169 "This will acknowledge receipt of copy of your salary ordinance [sic] establishing increments effective January 1, 1958.
I have been directed by the Board of Finance to advise you that no increases in salary shall appear on payrolls submitted by your board beginning January 1, 1958."
This letter appears in the minutes of the board of health meeting held on January 15, 1958, at which time the board noted that its employees were "jittery because their expected increments were not included in today's pay checks covering the 1st to the 15th of January." The minutes indicated further "that the Commissioners [of the board of health] promised that this matter would be straightened out as soon as possible and the increments given retroactive to January 1, 1958." Such increments have not been paid despite continued protests made by plaintiffs at the subsequent meetings of the board of health.
On December 10, 1957, the same date it adopted the increment resolution, the board of health adopted a "budget" for the year 1958 showing a payroll account of $351,752 and "Other expenses" account of $42,000. The explanation of the payroll account is set out in the budget as follows:

"Current payroll as of January 1, 1958 ................ $317,384.00
 Increments due on January 1, by ordinance:
 Nurses ........................................... 2,400.00
 Sanitarians ...................................... 1,080.00
 Certain Laboratory Personnel ..................... 2,000.00
 Increments for persons not yet on schedule ....... 12,788.00
Vacancies which must be filled:
 3 Public Health Nurses @ $3400 each .............. 10,200.00
 1 Clerk-typist @ $2700 ........................... 2,700.00
 1 Laboratory Technician @ $3200 .................. 3,200.00"

A copy of the "budget" was sent to the board of finance of the defendant City of Paterson and as such constituted the estimate of the appropriation it believed necessary for health purposes which it was required to submit to the governing body of the City of Paterson by R.S. 26:3-43, as amended, which reads as follows:
"The local board of health of every municipality other than a township, shall each year, before the budget of municipal taxes to be *170 levied for the year shall be determined, present to the governing body of the municipality, an estimate of the appropriation which it believes necessary for health purposes. The governing body shall appropriate the amount of such estimate or such other amount as it may determine."
Thereafter, and on or about March 10, 1958, the municipal budget for the City of Paterson was adopted and provided therein the following:

"Board of Health Salaries ......................... $318,000.00
 Other Expenses ................................... 40,000.00"

so that the total amount thus appropriated by the city to the board of health was $358,000, instead of the $393,752 it had asked for.
The issue presented requires an appraisal of the governmental status of the board of health and its relationship to the municipality, the City of Paterson. Defendants' answer and briefs treat the board of health as if it were but another municipal board similar to the board of finance, the board of fire and police commissioners, or the board of public works which exercise municipal powers vested in the city by its charter and supplemental legislation. That is not the governmental status of the board of health.
Paterson is a city of the second class, with a population in excess of 125,000. Prior to the enactment of chapters 45, 46, and 62 of the Laws of 1907 (now R.S. 40:174-6 et seq., 40:186-5 et seq., and 40:175-9 et seq.), the governing body consisted of a mayor and an elected board of aldermen. The 1907 legislation created three boards, a board of finance, a board of public works, and a board of fire and police commissioners, with members appointed by the mayor, and transferred most of the powers theretofore exercised by the board of aldermen among those three boards.
The 1907 statutes did not increase or expand the powers of the city or its governing body; it merely distributed most of the powers theretofore exercised by the board of aldermen as the governing body of the city among *171 the three new boards. (McCarter, Attorney General v. McKelvey, 78 N.J.L. 3 (Sup. Ct. 1909), affirmed 78 N.J.L. 621 (E. & A. 1909); Lendrim v. Ryan, 98 N.J.L. 322 (Sup. Ct. 1922).)
But the board of health was not created, nor does it derive its powers from the charter of the City of Paterson.[1] It owes its creation to and derives its powers from the Board of Health Act originally enacted in 1887 (L. 1887, c. 68), and now found in R.S. 26:3-1 et seq.; see also R.S. 26:1A-1 et seq.; Schwarz Bros. Co. v. Board of Health of Jersey City, 83 N.J.L. 81, 87 (Sup. Ct. 1912), affirmed 84 N.J.L. 735 (E. & A. 1913); Board of Health of City of Asbury Park v. N.Y., etc., R.R. Co., 77 N.J.L. 15 (Sup. Ct. 1908).
The Board of Health of the City of Paterson was created and exists by virtue of the statutory mandate that "there shall be a board of health in every municipality in this State." R.S. 26:3-1, as amended, L. 1951, c. 69. None *172 of the statutory exceptions which exclude certain municipalities from the operation of the section apply to Paterson.
As Vice-Chancellor Bigelow said in State v. Mundet Cork Corp., 126 N.J. Eq. 100, 101-102 (Ch. 1939), affirmed o.b. 127 N.J. Eq. 61 (E. & A. 1939):
"The state of New Jersey endeavors to protect public health through the instrumentality of a state department of health (R.S. 26:2-1), and local boards, which all our municipalities are ordered to maintain (R.S. 26:3-1). The director of the state department is required generally to enforce all laws relating to the health of the people of the state. R.S. 26:2-15. Among other duties, the department is directed to call to the attention of local health authorities any failure on their part to enforce the laws and to order them to do so and if they fail to comply, then the state department itself must immediately take the action which the local authorities fail to perform. R.S. 26:2-20. Our public health organization is statewide, with local boards charged in the first instance to safeguard public health in their several vicinages, and with a central body in which is vested final power and responsibility."
So, too, in Zullo v. Board of Health, Woodbridge Township, 9 N.J. 431 (1952), Chief Justice Vanderbilt said, at page 435:
"Local boards of health are governmental agencies created in every municipality under statutory mandate, R.S. 26:3-1, for the purpose of exercising locally the inherent police powers of the State with respect to matters pertaining to public health. * * *"
See also Board of Health of Weehawken Township in Hudson County v. N.Y. Central R. Co., 4 N.J. 293 (1950); Fredericks v. Board of Health of West Hoboken, 82 N.J.L. 200 (Sup. Ct. 1912).
Such local boards of health exercise, "not an administrative function, but rather a portion of the police power to serve the public health. They are `governmental agencies by which the police law of the state is locally exerted.' * * *" Board of Health of Weehawken Township in Hudson County v. N.Y. Central R. Co., 4 N.J. 293, 300 (1950).
Broad powers are granted by the statute to local boards of health. Included are the power to "adopt rules, regulations *173 or ordinances for its government and that of its officers and employees not inconsistent with law or the state sanitary code." (R.S. 26:3-2); the power to adopt health ordinances (R.S. 26:3-64 et seq.; R.S. 26:1A-9, 12; R.S. 26:3-31, as amended; see also Board of Health of Weehawken Township of Hudson County v. N.Y. Central R. Co., supra); and the power to prosecute actions not only for violations of its own ordinances but also of the state sanitary code (R.S. 26:1A-10).
Further, by R.S. 26:3-19, as amended, the
"local board may employ such personnel as it may deem necessary * * * to carry into effect the powers vested in it [and] shall fix the duties and compensation of every appointee."
A local board of health is an entity distinct from the municipality in which it is established, Board of Health of City of Asbury Park v. N.Y., etc., R.R. Co., 77 N.J.L. 15 (Sup. Ct. 1908); Valentine v. City of Englewood, 76 N.J.L. 509, 512 (E. & A. 1908), even though the municipality determines the number of its members (R.S. 26:3-3, as amended), the manner of their appointment (R.S. 26:3-5, as amended), and the amount of moneys to be appropriated to it (R.S. 26:3-43, as amended).
As Justice Garrison said in Board of Health of City of Asbury Park v. N.Y. etc. R.R. Co., 77 N.J.L. 15, 16 (Sup. Ct. 1908):
"* * * Boards of health * * * though established in and by cities, trace their source and derive their authority and jurisdiction, not from such city or its charter, general or special, but from the board of health act of 1887. Gen. St., 1895, p. 1634. This act, which is a complete legislative scheme upon the subject, provides that there shall be a local board of health in every city, the powers, authority, and procedure of which it minutely defines, leaving to such city merely the manner of appointment and the term of office of its members. * * * That a board of health when established in any city by the appointment of members to fill such board, is in all essential particulars a creature of the board of health act would seem to be clear. * * *."
Neither the board of health, its members nor its employees are agents of the municipality nor is the city *174 liable for their acts. Valentine v. City of Englewood, 76 N.J.L. 509 (E. & A. 1908).
Nor may the municipality's governing body exercise the duties delegated by law to the local board of health. Valdes v. Baumann, 131 N.J.L. 43 (Sup. Ct. 1943); Sagarese v. Board of Health of Town of Morristown, 27 N.J. Super. 400 (App. Div. 1953); see also Zullo v. Board of Health of Woodbridge Township, 9 N.J. 431 (1952).
So, since a local board of health has power to appoint its officers, agents, and employees, including health officers and plumbing inspectors, the municipality's governing body may not appoint such officers, agents, and employees whether they be health officers (Valdes v. Baumann, 131 N.J.L. 43 (Sup. Ct. 1943) or plumbing inspectors (Sagarese v. Board of Health of Town of Morristown, 27 N.J. Super. 400 (App. Div. 1953).
Further, since the power to fix the compensation of its appointees is vested by law in the board of health, the municipality may not fix or specify what that compensation should be. Sagarese v. Board of Health of Town of Morristown, supra.
As Judge Clapp said in the Sagarese case, at page 402:
"R.S. 26:3-19 provides that a local board of health may employ personnel, including plumbing inspectors, and that it `shall fix the * * * compensation of every appointee.' Any action on the part of the town to fix plaintiff's salary or any other action on its part fixing his compensation or his right to recover for expenses (if the town took any other action) was beyond its power. The mayor and board of aldermen cannot intrude upon the duties given by law to the board of health alone."
It is, therefore, clear that neither the City of Paterson nor its board of finance, which exercises the city's powers in matters "relating to the financial affairs of the city" (Lendrim v. Ryan, 98 N.J.L. 322, 323 (Sup. Ct. 1922), has the power to fix the compensation of appointees of the board of health. Nor do they have the power to veto salaries fixed by ordinance of the board of health.
*175 Although the governing body of the municipality, in this case the Board of Finance of the City of Paterson, may determine what amount it will appropriate in a particular year to the local board of health for health purposes (R.S. 26:3-43, as amended, quoted supra; Union County Park Commission v. Board of Chosen Freeholders, 3 N.J. 73 (1949); cf. Nolan v. Fitzpatrick, 9 N.J. 477 (1952)), the determination of how that money is to be spent and what its appointees are to be paid is the function and responsibility of the board of health.
The fact that the board of health did not receive the full appropriation which it sought does not relieve it of its obligation to pay the salaries fixed by its salary ordinances which have not been amended. (See Offhouse v. State Board of Education, 131 N.J.L. 391 (Sup. Ct. 1944), appeal dismissed 323 U.S. 667, 65 S.Ct. 68, 89 L.Ed. 542; see also R.S. 26:3-25.1.)
Nor is there any merit to defendants' claim that there was no appropriation made from which the unpaid portions of plaintiffs' salaries could be paid; in fact, there was. Warren v. Hudson County, 135 N.J.L. 178, 182 (E. & A. 1947); McMahon v. City of Bayonne, 10 N.J. Misc. 1215 (Sup. Ct. 1932). In passing, it may be noted that the proofs show that the board of health did not use all the money appropriated to it for 1958. $3,000 thereof was transferred back to the city at the end of October 1958.
Moreover, even if it were true that there were insufficient moneys appropriated, that would not constitute a defense to this action. Plaintiffs are permanent employees of defendant board of health, not persons hired by contract for a special task (cf. Murphy v. Town of West New York, 132 N.J.L. 595 (Sup. Ct. 1945); Bauer v. City of Newark, 7 N.J. 426 (1951), nor holders of newly created positions. They are permanent employees, occupying legally created positions, with salaries legally established by ordinance. As was said by the Supreme Judicial Court of Massachusetts in Barnard v. City of Lynn, 295 Mass. 144, 3 N.E.2d 264, *176 266 (1936), with reference to employees of the defendant city:
"But without express statutory direction the city must include in the budget the sums necessary to pay the permanent force of employees, or must take lawful action to reduce either the force or the wages. It cannot remain inactive, permit the employees to work at the rate of wages lawfully fixed, and then set up a lack of money as an excuse for not paying them."
The remaining defenses asserted require but little comment. The "Second Separate Defense" of the answer charging that the salary ordinances are void because they "fix a salary scale to be effective beyond the duly constituted term of the Board" was not argued. In any event, the law is to the contrary. Bodnar v. Board of Health of Carteret, 117 N.J.L. 527 (E. & A. 1936).
Nor is there any merit to the assertion that the board of health cannot be sued in an action such as this. Fredericks v. Board of Health of Town of West Hoboken, 82 N.J.L. 200 (Sup. Ct. 1912); see McQuillin, Municipal Corporations (3d ed.), § 49.02, p. 138.
Plaintiffs are entitled to judgment against defendant board of health for the unpaid portions of their salaries fixed by the salary ordinances for the period from January 1 to July 31, 1958. The action cannot be maintained against the city and will be dismissed as to it, but without costs.
Form of judgment may be presented on notice or consented to as to form.
NOTES
[1] There is no need to unduly lengthen this opinion by a historical survey of the factors which led to the enactment of the Board of Health Act of 1887 and its correlation of the powers and duties of the State Board of Health and those of the local boards of health which the Act established in every municipality. It is evident, however, that among those factors was the failure or refusal of municipal governing bodies to give their existing boards of health sufficient power, authority, and facilities to deal with the health problems which then plagued the State. See e.g., the "Report of the Health Commission of the State of New Jersey, for the year 1874" in which the situation then existing in the City of Paterson was described as follows:

"The city of Paterson has an energetic Health Physician and a Board of Health, with a Bureau for sanitary inspection and vital statistics. Next to Newark, it is, we should think, the best organized for work of any in the State.
"The reporter says: `The power by the terms of the city charter is ample'; but, practically, its power and the performance of its duties has been very limited.
"The defect in power arises from the fact that no sufficient authority has been conferred on it by ordinances of the Board of Aldermen, and in the performance of its duty it is hindered, from the too frequent change (yearly) in the members of the Board, and the inability of the executive officer to give much attention to the work. * * *"