66 N.J. Super. 530 (1961)
169 A.2d 689
JOHN E. MYERS, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF CEDAR GROVE, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1961.
Decided April 3, 1961.
*531 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Francis F. Welsh argued the cause for appellant.
Mr. Samuel Rosenblatt argued the cause for respondents (Mr. Nicholas H. Hagoort, Jr., attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff has been part-time plumbing inspector of the Township of Cedar Grove since 1947. In April 1959 he instituted this action against the municipality, its governing body and its board of health (1) attacking a 1959 salary ordinance of the governing body changing his salary from $2,600 per year plus $300 for expenses to the rate of $5 per inspection and $10 per license examination; *532 (2) seeking a determination establishing his right of tenure in office and setting aside the alleged reduction of the salary thereof by the salary ordinance complained of; and (3) requesting the appropriation of sufficient money to pay the full salary due for the elapsed period of the year 1959. Plaintiff sues not only in his status as plumbing inspector but as a resident and taxpayer.
On the basis of the pleadings, cross-motions for summary judgment, and documentary exhibits, the Superior Court, Law Division, sustained the plaintiff's claim of tenure in office but determined that the change from a fixed salary to a fee basis of compensation was not a reduction in salary in derogation of plaintiff's tenure rights; moreover, that since, prior to 1956, plaintiff had been paid on a fee basis (percentage of fees collected) and had never complained of the change at that time to a salary basis, he was in laches. Judgment was entered for defendants on the claims for affirmative relief.
Defendants do not appeal from the adjudication of plaintiff's right to tenure, under N.J.S.A. 26:3-26, by virtue of five years' continuous local service as a state-licensed plumbing inspector, and we give no further consideration to that phase of the controversy, although we imply no opinion on the point, assuming such tenure for the purposes of this opinion.
The Township of Cedar Grove was a municipality governed by the Walsh Act (commission form of local government; R.S. 40:70-1 et seq.) from prior to 1947 until July 1, 1955. Effective that date, the voters of the municipality, by referendum, acting pursuant to the Optional Municipal Charter Law, L. 1950, c. 210, N.J.S.A. 40:69A-1 et seq., commonly known as the Faulkner Act, adopted Article 10, Council-Manager Plan B of the act, as their form of local government.
Plaintiff was first appointed plumbing inspector by the former board of commissioners May 20, 1947, and was given reappointments from time to time thereafter. A board of *533 health was established in the municipality by ordinance on November 16, 1953. This board reappointed plaintiff twice before the new form of government went into effect.
The new municipal governmental organization was implemented by an ordinance adopted by the municipal council July 29, 1955. Section 25 thereof provides for a board of health consisting of five members to be appointed by the council. The municipal manager is given the power to appoint "all employees of the Board," including the plumbing inspector, and they are directed to be under his "direct supervision and control." There was no formal appointment of plaintiff to office under the new form of government, but he has served in the part-time position continuously since.
Plaintiff is and at all times during his service in office has been a licensed plumber conducting his own private plumbing business in Cedar Grove. As plumbing inspector he has no definite hours or times of employment. He is required to be available for inspections or consultations with plumbers at any time during the business hours of the week. Since July 1, 1955 the board of health has engaged or dismissed no employees and has adopted no health ordinances, any such having been adopted by the municipal council. The board has been purely advisory in character. Aside from plaintiff, the local "health department" consists only of a part-time, non-resident health officer, who is plaintiff's immediate superior, and a clerk-typist.
Prior to July 1, 1955 plaintiff was paid one-half of the plumbing inspection fees collected. In 1955 his remuneration for the year 1956 was altered by salary ordinance of the municipal council to $2,500 per year plus $300 for traveling expenses. Plaintiff did not at that time claim he had been "reduced" in salary. This was increased to $2,600 plus expenses for the calendar years 1957 and 1958. Toward the end of 1958 the township manager conferred with plaintiff as to correlating his compensation with the amount of his work because of an alleged decline in the *534 volume of such work. Finally, on recommendation of the manager, the council adopted the $5 per inspection and $10 per examination rates as plaintiff's compensation for 1959. It is stipulated that at this rate plaintiff would have earned $2,660 for the year 1959. That fact was, of course, not known when the salary ordinance was adopted at the beginning of the year.

I.
The principal legal question argued below and before us is whether the defendants have acted illegally in this matter, for the reason that the council and manager have assumed powers with respect to the determination of plaintiff's compensation which belong solely to a separate and independent board of health required to be functioning in the township under and pursuant to the statute for the establishment and regulation of municipal boards of health. R.S. 26:3-1 et seq., as amended.
The defendants contend that the Faulkner Act abolishes all previously existing offices in a municipality adopting one of the forms of local government provided for therein except certain expressly designated offices and bodies, and vests all control over, and the fixing of compensation for, all municipal employees in the council and manager under a council-manager form. The aim of the Faulkner Act, it is said, is to "centralize governmental responsibility and control rather than distribute and dilute same among numerous boards, bodies and agencies." It is particularly stressed that the municipal manager is constituted the "chief executive and administrative official of the municipality," N.J.S.A. 40:69A-95(a); and that he appoints and removes "all department heads and all other officers, subordinates, and assistants for whose selection or removal no other method is provided in this article * * * and * * * supervise[s] and control[s] his appointees" (he may authorize the head of a department to appoint and remove subordinates). Id. (c). The contention is that such concentration *535 of administrative control of subordinate officials evinces a legislative policy inconsistent with the existence of a board of health possessed of the power, under R.S. 26:3-19, as amended, to "employ such personnel as it may deem necessary, including * * * plumbing inspectors * * *" and to "fix the duties * * * and compensation of every appointee."
The problem presented is purely one of statutory construction and mutual accommodation of legislative purposes and objectives. Consideration must be given not only to the several relevant provisions of the Faulkner Act, and of the Board of Health Act, set out in Title 26, chapter 3 of the Revised Statutes, as amended, but also to pertinent aids to construction from legislative history.
The Board of Health Act was originally enacted in 1887 (L. 1887, c. 68) in order to assure a minimum state-oriented and state-supervised health program for every municipality in the State. See the comprehensive discussion of the subject in Grosso v. City of Paterson, 55 N.J. Super. 164, 171-174 (Law Div. 1959); see also Schwarz Bros Co. v. Board of Health, 83 N.J.L. 81, 87 (Sup. Ct. 1912); Board of Health of City of Asbury Park v. N.Y., etc., R.R. Co., 77 N.J.L. 15 (Sup. Ct. 1908). We cannot improve, for present purposes, upon Judge Kolovsky's succinct summary in the Grosso case, supra, of the authorities bearing upon the powers, authority and character of jurisdiction exercised by boards of health under Title 26, Article 3. The whole of that discussion bears importantly on the present issue. (55 N.J. Super., pp. 172-174):
"As Vice-Chancellor Bigelow said in State v. Mundet Cork Corp., 126 N.J. Eq. 100, 101-102 (Ch. 1939), affirmed o.b. 127 N.J. Eq. 61 (E. & A. 1939):
`The state of New Jersey endeavors to protect public health through the instrumentality of a state department of health (R.S. 26:2-1), and local boards, which all our municipalities are ordered to maintain (R.S. 26:3-1). The director of the state department is required generally to enforce all laws relating to the health of *536 the people of the state. R.S. 26:2-15. Among other duties, the department is directed to call to the attention of local health authorities any failure on their part to enforce the laws and to order them to do so and if they fail to comply, then the state department itself must immediately take the action which the local authorities fail to perform. R.S. 26:2-20. Our public health organization is state-wide, with local boards charged in the first instance to safeguard public health in their several vicinages, and with a central body in which is vested final power and responsibility.'
So, too, in Zullo v. Board of Health, Woodbridge Township, 9 N.J. 431 (1952), Chief Justice Vanderbilt said, at page 435:
`Local boards of health are governmental agencies created in every municipality under statutory mandate, R.S. 26:3-1, for the purpose of exercising locally the inherent police powers of the State with respect to matters pertaining to public health. * * *'
See also Board of Health of Weehawken Township in Hudson County v. N.Y. Central R. Co., 4 N.J. 293 (1950); Fredericks v. Board of Health of West Hoboken, 82 N.J.L. 200 (Sup. Ct. 1912).
Such local boards of health exercise, `not an administrative function, but rather a portion of the police power to serve the public health. They are "governmental agencies by which the police law of the state is locally exerted." * * *' Board of Health of Weehawken Township in Hudson County v. N.Y. Central R. Co., 4 N.J. 293, 300 (1950).
Broad powers are granted by the statute to local boards of health. Included are the power to `adopt rules, regulations or ordinances for its government and that of its officers and employees not inconsistent with law or the state sanitary code.' (R.S. 26:3-2); the power to adopt health ordinances (R.S. 26:3-64 et seq.; R.S. 26:1A-9, 12; R.S. 26:3-31, as amended; see also Board of Health of Weehawken Township of Hudson County v. N.Y. Central R. Co., supra); and the power to prosecute actions not only for violations of its own ordinances but also of the state sanitary code (R.S. 26:1A-10).
Further, by R.S. 26:3-19, as amended, the
`local board may employ such personnel as it may deem necessary * * * to carry into effect the powers vested in it [and] shall fix the duties and compensation of every appointee.'
A local board of health is an entity distinct from the municipality in which it is established, Board of Health of City of Asbury Park v. N.Y., etc., R.R. Co., 77 N.J.L. 15 (Sup. Ct. 1908); Valentine v. City of Englewood, 76 N.J.L. 509, 512 (E. & A. 1908), even though the municipality determines the number of its members (R.S. 26:3-3, as amended), the manner of their appointment *537 (R.S. 26:3-5, as amended), and the amount of moneys to be appropriated to it (R.S. 26:3-43, as amended).
As Justice Garrison said in Board of Health of City of Asbury Park v. N.Y. etc. R.R. Co., 77 N.J.L. 15, 16 (Sup. Ct. 1908):
`* * * Boards of health * * * though established in and by cities, trace their source and derive their authority and jurisdiction, not from such city or its charter, general or special, but from the board of health act of 1887. Gen. St., 1895, p. 1634. This act, which is a complete legislative scheme upon the subject, provides that there shall be a local board of health in every city, the powers, authority, and procedure of which it minutely defines, leaving to such city merely the manner of appointment and the term of office of its members. * * * That a board of health when established in any city by the appointment of members to fill such board, is in all essential particulars a creature of the board of health act would seem to be clear. * * *.'
Neither the board of health, its members nor its employees are agents of the municipality nor is the city liable for their acts. Valentine v. City of Englewood, 76 N.J.L. 509 (E. & A. 1908).
Nor may the municipality's governing body exercise the duties delegated by law to the local board of health, Valdes v. Baumann, 131 N.J.L. 43 (Sup. Ct. 1943); Sagarese v. Board of Health of Town of Morristown, 27 N.J. Super. 400 (App. Div. 1953); see also Zullo v. Board of Health of Woodbridge Township, 9 N.J. 431 (1952).
So, since a local board of health has power to appoint its officers, agents, and employees, including health officers and plumbing inspectors, the municipality's governing body may not appoint such officers, agents, and employees whether they be health officers (Valdes v. Baumann, 131 N.J.L. 43 (Sup. Ct. 1943) or plumbing inspectors (Sagarese v. Board of Health of Town of Morristown, 27 N.J. Super. 400 (App. Div. 1953).
Further, since the power to fix the compensation of its appointees is vested by law in the board of health, the municipality may not fix or specify what that compensation should be. Sagarese v. Board of Health of Town of Morristown, supra.
As Judge Clapp said in the Sagarese case, 27 N.J. Super., at page 402:
`R.S. 26:3-19 provides that a local board of health may employ personnel, including plumbing inspectors, and that it "shall fix the * * * compensation of every appointee." Any action on the part of the town to fix plaintiff's salary or any other action on its part fixing his compensation or his right to recover for expenses (if the town took any other action) was beyond its power. The mayor and board of aldermen cannot intrude upon the duties given by law to the board of health alone.'"
*538 See also, bearing upon the fiscal relationship between the local board of health and the governing body of the municipality, Grosso v. City of Paterson, 33 N.J. 477 (1960), affirming 59 N.J. Super. 412 (Law Div. 1960).
It should at once be observed that the special directions in N.J.S.A. 26:3-9 as to the membership of the board of health in "every township having a population of not more than twenty thousand inhabitants" have not been argued to be applicable here, notwithstanding Cedar Grove is denominated a township, and is of less than 20,000 population. This is undoubtedly for the reason that the act specifies that the members of the township committee, inter alia, shall serve as members of the board, and Cedar Grove is, of course, no longer governed by a township committee.
Defendants argue that a Title 26 board of health is not operative in a Faulkner Act municipality by virtue of the exception which has always been found in N.J.S.A. 26:3-1 and its predecessor enactment to the mandate for universal creation of local boards of health:
"* * * except that in any municipality operating under laws establishing a form of government for such municipality under which the full powers of a local board of health can not be exercised by a local board of health so appointed or designated, the respective functions of a local board of health shall be exercised by such boards, bodies, or officers as may exercise the same according to law."
The assertion that an optional charter plan under the Faulkner Act is a "form of government * * * under which the full powers of a local board of health can not be exercised by a local board of health" appointed or designated as provided in chapter 3 of Title 26 cannot be sustained on the basis of any express provision of the Faulkner Act having that avowed effect. The quoted exception in N.J.S.A. 26:3-1 probably was intended, when drafted in 1887, to have reference to special municipal charters or other specific statutes for the creation of forms of municipal government having the express import or effect of the exception as stated.
*539 It is quite evident that the Faulkner Act did not contemplate that its provisions were to constitute exclusive sources of authority for local governmental employment, for each of the articles, 3 through 16, providing for a different specific form of local government thereunder, contains a provision that each municipality under the particular article "shall be governed" by the particular governing body or official called for thereunder, e.g., "by an elected council and by an appointed municipal manager," "and by such other officers and employees as may be duly appointed pursuant to this article, general law, or ordinance" (emphasis added). See, as to Council-Manager Plan B, N.J.S.A. 40:69A-100. The foregoing provision is consonant with N.J.S.A. 40:69A-26, which provides that after adoption of one of the optional forms of government provided in the act, the municipality should thereafter be governed by the plan adopted, the act, "and by all applicable provisions of general law * * *."
A "general law" is defined by the Faulkner Act, N.J.S.A. 40:69A-28, for purposes of the act, as any law
"not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities, and the following additional laws whether or not such additional laws are so applicable or available to all municipalities: legislation relating to taxation, local courts, education, health, public authorities serving more than one municipality, and municipalities in unsound financial condition." (Emphasis added)
It is thus apparent that it was contemplated by the act that if, by the terms and provisions of a general law, such as that governing boards of health, which was applicable to municipalities generally, and in terms inclusive of the particular one functioning under the Faulkner Act, specific bodies, officials or employees were required to be appointed for local governmental purposes, such appointees would function in the municipality along with those called for by the express provisions of the Faulkner Act itself and those coming into being under any ordinance adopted under *540 the act. General legislation relating to "health" was expressly so made applicable.
The foregoing conclusion as to the intent of the Faulkner Act is strongly fortified by the express recognition of boards of health as one of the kinds of bodies which would continue to function pursuant to general law in a Faulkner Act municipality, in the first full report (then denominated Final Report), dated February 14, 1949, of the Commission on Municipal Government which drafted the legislative program finally adopted in 1950. The body of the report sets forth the basic legislative framework of the proposed optional charter plan scheme (although the kinds of plans available were subsequently amplified). In the Commission's preliminary explanatory text there appears the following (at p. 13):
"The Commission has sought to provide sufficient flexibility in the several plans so that each municipality could decide for itself how it wished to organize its local administration, within the general principle that each administrative department should be headed by a single executive. This would not permit the past practice of quasi-independent boards in many fields where they have been common, but the plans allow the operation of general laws in those fields in which boards or commissions are essential to carry out particular functions or discharge special trusts. These exceptions include, for example, boards of education, boards of health and boards of zoning adjustment. In all cases the local governing body is authorized to establish advisory boards so as to have the advantage of the broadest possible citizen consultation and participation in the affairs of local government." (Emphasis added)
The significance of the foregoing is enhanced by the fact that sections 2-1 and 2-3 of the proposed legislative draft text as set forth in the report are substantially the same as N.J.S.A. 40:69A-26 and 28, respectively, quoted above. Moreover, with each kind of optional plan set forth in the draft text submitted by the Commission, there is the same kind of reference to general law as was noted above in respect of N.J.S.A. 40:69A-100. See also "Public Hearing on Assembly Bills (of 1949) Numbers 300, 301, 302, *541 303, 304, 305, 306, 307 and 308," conducted March 11, 1949, p. 15, comments of Charles A. Kientz, Jr.
Nothing is to be found in the Second Report of the Commission on Municipal Government, submitted February 20, 1950, which in any way derogates from the force of the aforementioned observations of the Commission as to the coexistence of statutory boards of health in Faulkner Act municipalities made in its 1949 report.
Defendants seek to sustain their position on the basis of the transitional section of the Faulkner Act. N.J.S.A. 40:69A-207. This reads, in material part:
"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates or of any official or employee now protected by any tenure of office law, or of any policeman, fireman, teacher, principal or school superintendent whether or not protected by a tenure of office law. * * *"
The argument is that the omission of boards of health from the proviso indicates that such bodies existing under Title 26 were not intended to be continued in optional charter plan municipalities. The point made is not persuasive. For one thing, the proviso qualifies the abolition of offices, not an abolition of a board. In any event, N.J.S.A. 26:3-5 provides that the members of the board of health "shall be appointed in such manner as the governing body may by ordinance provide." It may therefore well follow that when an optional charter plan is adopted under the Faulkner Act it is the comprehensive legislative intent that, while a Title 26 board of health, as such, should exist in the municipality, the offices of any members of a pre-existing board of health should terminate, their successors to be appointed in such manner as the newly invested governing body may by ordinance provide. It will be noted that *542 in the draft text of the proposed act set forth in the 1949 report of the Commission on Municipal Government, cited above, there is included a comparable transitional section which also omits any reference to boards of health in the saving proviso (section 8-53, at p. 108). Yet, as seen above, the Commission nevertheless stated that boards of health were to continue under existing general law.
The judicial and legislative history of the relationship between the Board of Health Act and commission form of government under the Walsh Act is instructive in relation to the problem before us. In Istvan v. Naar, 84 N.J.L. 113 (Sup. Ct. 1913), it was argued that under the Walsh Act as originally enacted by L. 1911, c. 221, "the general scheme of statutory regulation of the public health was superseded so far as related to the local board of health, and not only the terms of office of the members of that board terminated, but the board of health as a corporate entity wiped out of existence" (at p. 113). Reliance was had upon the comprehensiveness of the language of the Walsh Act in respect of the powers and jurisdiction of the board of commissioners, then providing:
"The board of commissioners shall have and possess all administrative, judicial and legislative powers and duties now had and possessed by the mayor and city council and all other executive or legislative bodies in said city, and have complete control over the affairs of the city adopting the provisions of this act." (84 N.J.L., at p. 115)
and also, in section 2:
"The city council or other governing body or bodies theretofore acting as governing body or bodies and having any other functions shall be ipso facto abolished, and the terms of all councilmen, or aldermen, and all other officers whether elective or appointive, shall immediately cease and determine." (84 N.J.L., at p. 114)
In language substantially responsive, as well, to the argument made by defendants in the present case, the court rejected the contention, saying (84 N.J.L., at pp. 115, 116):
*543 "It can hardly be denied that the Legislature intended to confer on cities adopting the act of 1911 some power to legislate in matters of public health. But there is much greater difficulty in gathering, from the general provisions creating the board of commissioners and defining their powers, and naming the five departments, an intent to transfer to such board all the legislative and administrative jurisdiction previously exercised by the board of health under the Health Act. Granting that the Legislature, by the enactment of the statute of 1911, wished to create a scheme for the centralization of responsibility and authority, we should pause before construing the act as meaning, in the absence of plain words to that effect, that, after its adoption, there was to be no such thing as a board of health in the city of Trenton, and that the state-wide system of health boards which had existed for nearly a quarter of a century was to be abrogated in cities adopting the act of 1911. * * *" (Emphasis added)
However, the month following the Istvan decision its effect was erased through the adoption by the Legislature (L. 1913, c. 282) of a supplement to the Walsh Act providing:
"Whenever the provisions of the act to which this act is supplemental have been adopted by any municipality, either prior or subsequent to the passage of this act, all boards and bodies, whether State or local municipal agencies, then existing in such municipality (except the board of education and the district court or courts) shall be ipso facto abolished, and all the powers and duties devolved by law upon such boards and bodies shall pass to, vest in and be performed by the board of commissioners elected under the provisions of the act to which this act is supplemental * * *." (Emphasis added)
In Corb v. Board of Health of Town of Nutley, 101 N.J.L. 50 (Sup. Ct. 1925), after reviewing the legislative history and noting the decision in Istvan v. Naar, supra, the court held that the 1913 supplement abolished the statutory board of health of Nutley, a Walsh Act municipality. What is significant, for present purposes, about the foregoing, is that it required express supplementary legislative language abolishing state as well as local municipal boards and agencies, and not merely offices, to satisfy the court that the Legislature intended the demise of the statutory board of health under a newly established form of municipal government.
*544 It will be recalled from the authorities cited in the Grosso opinion, quoted from above, that statutory boards of health have a state character, although established in and for municipalities. Thus, the history of the Walsh Act shows the courts will not lightly imply from legislation establishing new forms of local government a legislative intent to abolish, in municipalities adopting such forms, local boards of health functioning under state health legislation. The history and important policy considerations underlying the Board of Health Act are such that nothing short of a positive indication of an intent to supersede such boards in municipalities will suffice to effect such a result where contended to flow from the adoption of legislation establishing new forms of local government. In application to the specific problem at hand, the evidence of the actual intent of the Commission which drafted the Faulkner Act, afforded by its report to the Legislature and Governor, cited above, is most compelling of the conclusion that the Board of Health Act continued to be applicable in Cedar Grove, notwithstanding the adoption of council-manager government in 1955. We so hold. Compare Valdes v. Baumann, 131 N.J.L. 43 (Sup. Ct. 1943), sustaining the status of the statutory board of health under mayor and council local government.
It results that Cedar Grove must and should forthwith, pursuant to R.S. 26:3-1 et seq., as amended, adopt an ordinance providing for the establishment and manner of appointment of the members of a statutory board of health. When established, that board will have exclusive jurisdiction over the employment and compensation of its personnel, including plaintiff, as provided by R.S. 26:3-19, as amended. But see also Grosso v. City of Paterson, supra (33 N.J. 477). Responding to plaintiff's complaint in his status as resident and taxpayer of Cedar Grove, we declare the 1959 salary ordinance void insofar as it concerns the compensation of the plumbing inspector.

*545 II.
Although the new board of health of Cedar Grove will by ordinance fix plaintiff's compensation for the future, it is dubious whether it would have the power retroactively to fix his compensation for the year 1959. See Sagarese v. Bd. of Health of Town of Morristown, 31 N.J. Super. 526, 529 (Law Div. 1954). The governing body of the municipality, of course, has no such authority under our ruling in I, hereinabove. See Sagarese v. Bd. of Health of Town of Morristown, 27 N.J. Super. 400 (App. Div. 1953).
But assuming that plaintiff, being possessed of the right not to be reduced in pay except for just cause after hearing under N.J.S.A. 26:3-26 (his tenure being assumed herein but not decided), is entitled to a judicial remedy of some kind to enforce the substantive right, it was not shown below that in fact he was subjected to a reduction in pay. This being concededly a part-time position, there is no essential reason shown or even argued by plaintiff why such an employee may not lawfully be compensated by the municipality on a fee basis rather than at a fixed annual salary. See 4 McQuillin, Municipal Corporations (3d ed. 1949), § 12.189, p. 56. Indeed, as noted by the trial court, plaintiff was on a fee basis prior to 1956 and never complained of it, or of his change to a salary basis in 1956. No proofs were adduced in the Law Division indicating an invidious intention on the part of the Cedar Grove authorities, by the change of method of compensation put into effect for 1959, to reduce plaintiff's pay rather than to make it conform with the altered volume of his work. If, in circumstances like those here shown, a change of method of compensation from a flat annual salary to a fee basis, adopted in good faith by the municipal authorities, constitutes a "reduction in pay" for the mere reason that it may eventuate that the employee will receive less remuneration because of lessened *546 work, plaintiff has cited no supporting authority for such a proposition, and we will not so conclude on principle.
On this appeal plaintiff has shifted his position from that taken below, where he asserted a grievance only as to 1959 compensation, and now seeks reimbursement for the years 1956, 1957 and 1958, retroactively, on the basis of the percentage of fees arrangement which was in effect prior to 1956. There is no reason why we should not here enforce against plaintiff the settled rule that a claim not asserted at trial will not for the first time be entertained on appeal. In any case, any claim based on the actions of the authorities in 1956, 1957 and 1958 was long out of time when this complaint was filed in April 1959. R.R. 4:88-15. Nor is there any reason founded in manifest considerations of justice why the bar of limitations should not be applied here against plaintiff as to claims for those years. Id. (c).
The judgment is modified as to those recitals thereof which declare valid the actions of the defendants with respect to the effect of the salary ordinance and municipal budget upon the salary of the plaintiff for the year 1959, and with respect to the ordinance of July 22, 1955 insofar as it authorizes the township manager to appoint employees of the board of health. In those respects, the judgment is set aside; in all others it is affirmed. No costs.