89 N.J. Super. 374 (1965)
215 A.2d 60
ITZEN & ROBERTSON, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
BOARD OF HEALTH OF THE BOROUGH OF OAKLAND AND ELSIE BARWICK, SECRETARY TO THE BOARD OF HEALTH OF THE BOROUGH OF OAKLAND, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 8, 1965.
*376 Mr. Jerome Vogel for plaintiff (Messrs. Jeffer, Walter & Tierney, attorneys).
Mr. Gilbert I. Wasserman for defendants (Messrs. Hirschklau & Wasserman, attorneys).
SCHNEIDER, J.C.C. (temporarily assigned).
Plaintiff and defendants filed motions for summary judgment in the above suit in lieu of prerogative writs seeking to review an ordinance of the Board of Health of the Borough of Oakland concerning maintenance of septic tanks. The parties have agreed on a stipulation of facts and the matter is determined by these summary proceedings.
Plaintiff is engaged in the business of constructing sewage disposal systems. He does so in the Borough of Oakland, and has been licensed there in accordance with the local ordinance. On October 21, 1964 plaintiff sought a permit to construct a sewage disposal system upon Lot 3B in Block 3205 on the Oakland tax assessment map. The results of a percolation test, a soil log test and a plan for the proposed installation were filed and approved by the sanitary inspector under the terms of the existing local ordinance.
The secretary of the board of Health advised plaintiff it must complete, sign and file a maintenance obligation, as provided and in the form required under section 2.2 of ordinance No. 64-0-18, under attack in this case. Plaintiff was denied a permit because of its refusal to sign the maintenance obligation.
*377 Plaintiff attacks that part of the ordinance requiring the execution of the maintenance obligation prior to the issuance of a permit to erect the sewage disposal system.
Section 1 of the ordinance requires compliance with standards for construction of sewerage facilities as promulgated by the State Department of Health under the Realty Improvement Sewerage and Facilities Act (1954), unless higher standards are prescribed in the ordinance.
Section 2.2 provides:
"No permit shall be issued by the Board pursuant to this Section unless and until the applicant therefor shall have executed a written obligation in a form determined and adopted by the Board by resolution, obligating the applicant to maintain, repair, reconstruct, alter, change and improve the disposal system covered by the application for said permit as directed by the Board or its Sanitary Inspector for the period of one year after the date that said systems are first put in operation after the Certificate of Compliance provided for by Section 5.1 of this ordinance is issued."
Under section 3.4, providing for licenses for construction, installation, repair and alteration of sewerage facilities, it is stated that the applicant for license shall file a $2,000 bond to secure the performance of the maintenance obligations. The ordinance is directed not at the owner of the property but to the constructor of the system, and the parties agree this is so.
The ordinance has the usual severability clause (section 12) in the event any part of the ordinance is declared illegal.
The maintenance obligation form binds the applicant to use such materials and so to construct and install the disposal system that it will remain in good repair, condition and operation for one year. The applicant agrees to repair, reconstruct, alter, change and improve said system if necessitated by any fault of materials, plans, methods or processes employed in the construction of said systems, as determined during said one-year period; and the applicant further agrees and binds itself that the system for such term shall be and remain in good serviceable condition, producing neither *378 a public nor private health nuisance and free from any defects that will impair the usefulness of the disposal system.
The form further provides that if at any time during the one-year period, in the judgment of the sanitary inspector, whose judgment shall be final and conclusive, the system becomes defective or does not operate in a serviceable condition because of defective materials, workmanship, plans, methods or processes, the applicant must repair, alter, reconstruct, change or improve the system as directed by the sanitary inspector.
Failure to perform in seven days requires reimbursement to property owner or board of health for any work done. The owner may then be authorized by the board to bring suit in his own name to recover damages sustained, and the applicant must agree that he may so be authorized.
Plaintiff has no objection to the license requirement, to the filing of plans and soil and percolation tests, the approval of same, the approval of the work and the certificate issuance to show proper compliance. It objects to the requirement for a maintenance bond, contending the board of health has no power to require the same. It also objects to the great discretionary power given to the sanitary inspector without any standards being fixed for his action.
We are very familiar with the fact of presumption of validity of municipal ordinances. State v. Wittenberg, 50 N.J. Super. 74 (App. Div. 1957), affirmed 26 N.J. 576 (1958). We know that municipalities derive their power from state law, either directly or by implication.
N.J.S.A. 26:3-31 provides:
"The local board of health shall have power to pass, alter or amend ordinances and make rules and regulations in regard to the public health within its jurisdiction, for the following purposes:

* * * * * * * *
g. (1) To regulate the location, construction, maintenance, method of emptying or cleaning, and the frequency of cleaning of any privy or other place used for the reception or storage of human excrement, and to prohibit the construction or maintenance of any privy or other such place until a license therefor shall have been issued by the board, *379 which license shall continue in force for one year from the date of issue.
(2) To fix the fee, not exceeding five dollars ($5.00), for such license, and to use the fees so collected in supervising and maintaining said privies or other places and in removing and disposing of the excrement therefrom.
(3) To revoke such license at any time if the owner or tenant of the property on which any privy or other such place is located, maintains the same in violation of law, or of the State sanitary code, or any ordinance or rule of the board.

* * * * * * * *
i. (1) To license and regulate the business of cleaning cesspools and privies, which license shall continue for the term of one year from the date of granting, and to fix the fee that shall be charged for such license, not exceeding twenty dollars ($20.00) for each vehicle or conveyance.
(2) To prohibit unlicensed persons from engaging in such business.
(3) To require any vehicle or conveyance used in such business within its jurisdiction to be approved by it.
(4) To revoke such license if any licensee or his employee or agent shall violate any ordinance or rule of the board in cleaning any cesspool or privy, or in removing the contents thereof."
It should be noted that under subsection (g) (3), above, the board is permitted to revoke the license if the owner or tenant fails to properly maintain. Subsection (i) refers only to companies or persons that clean cesspools. The person or firm constructing is usually not the same company or person that does the cleaning.
By reason of the importance of health matters and the protection necessary to the people of the community in health matters, the powers of the local board of health are wide and liberally construed. The powers vested in such board under N.J.S.A. 26:3-31 are police powers, to be construed liberally and broadly to serve the public health. Myers v. Township of Cedar Grove, 66 N.J. Super. 530 (App. Div. 1961). The board of health is the government agency by which the police power of the State is locally executed. Grosso v. City of Paterson, 55 N.J. Super. 164 (Law Div. 1959).
The original Board of Health Act of 1887 (R.S. 26:3-1 et seq.) was necessitated by "the failure or refusal of municipal governing bodies to give their existing boards of health *380 sufficient power, authority, and facilities to deal with the health problems which then plagued the State." Grosso v. City of Paterson, supra.
"The inherent general authority to conserve and protect the public health * * * is not curtailed by the specific enumeration of R.S. 26:3-31." Board of Health of Weehawken Tp. v. N.Y. Central R.R., 4 N.J. 293, 299 (1950).
See also Zullo v. Board of Health, Woodbridge Twp., 9 N.J. 431 (1952).
The power given to municipal bodies is not without limitations. 7 McQuillin, Municipal Corporations (3d ed. 1949), 24.263, pp. 107-109 states:
"It is generally within the express power of municipal corporations or boards of health or considered to be within their public power * * * for them to adopt suitable measures and take appropriate action with respect to * * * cesspools and septic tanks.
The regulation of the installation and maintenance of a sanitary system * * * and provisions for public inspection and supervision thereof are generally sustained as a necessary exercise of the police power, but such regulation must be reasonable, uniform in operation and not vest arbitrary and unbridled discretion in officials."
In Zullo v. Board of Health, Woodbridge Township, above, Chief Justice Vanderbilt stated:
"It is not to be presumed, therefore, that the local board of health in exercising its discretion in particular cases was intended to be free from the standards thus imposed." (9 N.J., at p. 439)
In Hasbrouck Heights Hosp. Ass'n v. Hasbrouck Heights, 15 N.J. 447 (1954), the court said: "An exercise of delegated power in a manner not within the contemplation of the Legislature must be restrained within proper bounds and be held void." (at p. 455) See also Oliva v. Garfield, 1 N.J. 184 (1948); Phillips v. Township Council, etc., Teaneck, 120 N.J.L. 45 (Sup. Ct. 1938), affirmed 122 N.J.L. 485 (E. & A. 1939); Guill v. Mayor, etc., of Hoboken, 21 N.J. 574 (1956).
*381 There is no provision in the statute authorizing maintenance bonds. Planning boards may require road and other maintenance bonds in connection with planned developments. These are required of the owner or developer and not the contractors.
Let us analyze the purpose of the ordinance. The property owner is constructing a house. His engineer or specialist prepares a plan for the septic tank installation. The plan is given to the installer who must follow the plan. He secures approval of the plan and gets a permit for the installation. He completes his work subject to the inspection of the municipal sanitary inspector and must demonstrate that the system is proper before he gets a certificate approving the system.
Thereafter the sanitary inspector determines that the system is not properly functioning. This may be the fault of the installer or the improper plan of the engineer. More often it fails to function because the owner has overloaded the system or permitted improper objects to be thrown into the system, or because there has been a failure to keep the system properly cleaned. There may be a breakdown because of damage to the system by a bulldozer landscaping the area or by any other digging operation.
The owner may protect himself against the installer by demanding a bond or in some other way. The ordinance seeks to protect, in addition to the public welfare, the private problems of the taxpayer. This is done by making the installer a guarantor if the system during the one-year period breaks down for any reason, or if the sanitary inspector in his final discretion determines that the entire system should be rebuilt, altered or changed, etc., because of fault of processes or because something happens to the system, regardless of whose fault it may be.
The ordinance even permits the board to give the owner permission to sue for the work done to correct any condition, regardless of fault.
The Board of Health has the power to compel the owner or occupant of premises to keep a septic tank system in *382 such condition of maintenance as required by state law or by any properly adopted and reasonable board rule or requirement.
Defendant objects to that part of the ordinance which permits the sanitary inspector to compel the installer to repair, alter, reconstruct, change or improve the system when he in his judgment, which is final and conclusive, determines that the system has become defective or does not properly operate because of defective materials, workmanship, plans, methods or processes. Defendant contends there are no standards except in the mind of the inspector, and there is no right of appeal.
In Garden State Farms v. Armstrong, 31 N.J. Super. 61, 75 (App. Div. 1954), the court held:
"There is no constitutional prohibition against the delegation of a large measure of discretionary authority to an administrative agent for the administration of a statute enacted pursuant to the police power of the State, provided the statute establishes a sufficiently basic standard and a definite and certain policy and rule of action for the guidance of such agent."
Standards need not be "set forth in express terms if they may reasonably be inferred from the statutory scheme as a whole." In re Berardi, 23 N.J. 485, 491 (1957). See also In re Bernaducci, 85 N.J. Super. 152, 155 (App. Div. 1964).
"Our courts have uniformly declared invalid municipal transactions where performance was required to be `to the satisfaction' of a particular municipal officer, or even the governing body." Jersey City Merchants Council v. Jersey City, 71 N.J. Super. 156, 162 (App. Div. 1961).
See also Armaniaco v. Borough of Cresskill, 62 N.J. Super. 476 (App. Div. 1960); Juice Bar Corp. v. Neptune Township Committee, 36 N.J. Super. 164 (App. Div. 1955); Waszen v. Atlantic City, 1 N.J. 272 (1949); Bd. of Com'rs of Ridgefield Park v. A.S. Pater Realty Co., 73 N.J. Super. 155 (Ch. Div. 1962). A delegation of a legislative function to an officer "without the promulgation of a standard to guide *383 him in the use of his discretion is void." Mister Softee v. Mayor, etc., of Hoboken, 77 N.J. Super. 354 (Law Div. 1962).
After the argument on the motion, counsel for defendant sent the court a letter setting forth a resolution which purports to give a hearing before the board of health where an installer is dissatisfied with the actions of the sanitary inspector. This resolution was passed after the motions were argued in this court. The court will not consider the resolution. It cannot amend the ordinance, and the resolution may be disregarded by future boards. If anything, it points up the weakness of the present ordinance.
Insofar as the ordinance compels the installer to furnish a maintenance bond, it is beyond the scope of the statute and will be set aside. The board of health is fully protected since it can condemn any property where the septic tank is a menace to health. The installer cannot be made to guarantee any more than its proper installation in accordance with State requirements.
A proper judgment shall be submitted by counsel for the plaintiff after submission to opposing counsel. There will be no costs.